[Civ. No. 24819. First Dist., Div. One. Aug. 8, 1968.]

ARTHUR CURTIS ANTRIM BUSH, Plaintiff and Respondent, v. TOM BRIGHT, as Director of the Department of Motor Vehicles, etc., et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Defendants and Appellants.

Berwyn A. Rice for Plaintiff and Respondent.

ELKINGTON, J.—This appeal concerns the interpretation of Vehicle Code section 13353, enacted in 1966, relating to chemical tests of intoxicated automobile drivers.

The section applies to any lawfully arrested person whom a peace officer has reasonable cause to believe was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. It provides that such person shall be deemed to have given his consent to a chemical test of his blood, breath or urine. He may choose the type of test to be given. It also provides that if such a person refuses the officer's request to submit to such a test it need not be given, but his driver's license shall be suspended for six months. Provision is made that the person be told of the penalty which will result from his refusal.

■ The purpose of section 13353 is to reduce the toll of death and injury resulting from the operation of motor vehicles on California highways by intoxicated persons. As said in *People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401], "In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention."

The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates. With this exception, the chemical tests may be given to any person covered by the statute, even if he be "dead, unconscious, or otherwise in a condition rendering him incapable of refusal."

■ Such tests do not violate one's right against self-incrimination (*Schmerber* v. *California,* 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-916, 86 S.Ct. 1826]; *People* v. *Sudduth,* *supra,* 65 Cal.2d 543, 546-547; *United States* v. *Wade,* 388 U.S. 218, 221 [18 L.Ed.2d 1149, 1153, 87 S.Ct. 1926]), nor one's right to be free from unreasonable searches and seizures (*Schmerber* v. *California, supra,* pp. 766-772 [16 L.Ed.2d pp. 917-920]), nor one's right to counsel (*United States* v. *Wade,* *supra*; *People* v. *Sudduth, supra,* p. 546; see also *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]).

The record before us discloses facts which are essentially uncontradicted. Respondent Arthur Curtis Antrim Bush was seen by a police officer driving an automobile in an erratic manner. He was lawfully arrested for the offense of driving a motor vehicle while under the influence of intoxicating liquor.

Bush had been at a party earlier that evening where he admittedly had at least 12 drinks of Scotch over ice. The drinks were larger than one would get in a bar, "certainly" more than an ounce in each drink. He then went to another party where he was sure he did not decrease the amount of his drinking. It is clear that when he was arrested he was grossly intoxicated. However, on three occasions when requested to submit to a chemical test he responded by answering "No," or by shaking his head negatively. Accordingly, a test was not given him. He had been properly advised as to the consequences of such a refusal.

After a Motor Vehicle Department administrative hearing Bush's license was ordered revoked for six months. He then sought a writ of mandate (Code Civ. Proc., § 1094.5) in the superior court for the purpose of annulling the order. The superior court exercised its independent judgment on the administrative record.[1]

The court's findings recite that at the time Bush "was requested to submit to said test [he] was incapable of refusing to so submit because of his extreme intoxication." It was concluded as a matter of law "The petitioner did not violate the provisions of Vehicle Code section 13353." From the ensuing judgment setting aside Bush's license suspension this appeal was taken.

Bush based his argument below, as he does here, on the following language of section 13353: "Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent." He contends that this provision "is intended to provide the person arrested with certain inalienable rights" affording "a fundamental protection to the person whose reasoning power or intelligence has been so greatly impaired as to prevent him from making an intelligent choice or waiving the right afforded him." The Legislature, he says, "intended that a person be aware of his rights and be given an opportunity to make a reasonable choice or a waiver." Finally, he says, since he was too drunk to make an intelligent waiver of his rights, he was completely unaffected by the portion of the statute under which he could refuse the test, and by the penalty provision for its refusal.

---

[1] The case was tried on the theory that the court was required to exercise its "independent judgment" on the record and that the "substantial evidence" rule did not apply. It is unnecessary in our resolution of this appeal to determine which was the applicable rule.

The statute's provision that "Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent" does not confer any "rights" upon an intoxicated driver. It simply allows the chemical test of a person who is dead, unconscious or otherwise unable to refuse—making it clear that even in such cases the earlier provision that the person shall be deemed to have given his consent shall nevertheless apply.

Bush otherwise miscontrues the purpose and meaning of the statute. It is firmly established that a drunken driver has no *right* to resist or refuse such a test (See *Schmerber* v. *California, supra,* 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-916]; *People* v. *Sudduth, supra,* 65 Cal.2d 543, 546-547). It is simply because such a person has the *physical power* to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness. Since Bush's claimed rights are nonexistent there can be no issue as to their waiver.

The construction placed upon the statute by the lower court and by Bush would lead to absurd consequences—the greater the degree of intoxication of an automobile driver, the lesser the degree of his accountability under the statute. It would invalidate section 13353 as to grossly intoxicated drivers and frustrate the purpose of the Legislature.

█ "Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity." (45 Cal.Jur.2d 625-626.) █ "[I]n construing a statute the courts may consider the consequences that might flow from a particular interpretation. They will construe the statute with a view to promoting rather than to defeating its general purpose and the policy behind it." (*Id.,* p. 631.) █ Remedial statutes such as section 13353 "must be liberally construed to effect their objects and suppress the mischief at which they are directed. They should not be given a strained construction that might impair their remedial effect." (*Id.,* pp. 681-682.)

Bush seems to argue that it is unreasonable and unfair to hold a person, deprived of understanding by his voluntary intoxication, accountable under Vehicle Code section 13353. An accountability for the results of one's voluntary intoxication is by no means novel in our law. For example, it has long

been the rule, as to crimes not involving specific intent or diminished capacity, that "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." (Pen. Code, § 22.) Even if one be unconscious as a result of his voluntary intoxication he may nevertheless be held criminally responsible for an act committed while in that state. "The union or joint operation of act and intent or criminal negligence must exist in every crime, . . . and is deemed to exist irrespective of unconsciousness arising from voluntary intoxication." (*People* v. *Conley*, 64 Cal.2d 310, 324 [49 Cal.Rptr. 815, 411 P.2d 911]; see also *People* v. *Alexander*, 182 Cal.App.2d 281, 291-292 [6 Cal.Rptr. 153]; Witkin, Cal. Crimes (1963) § 143, p. 136.)

It seems reasonable to us that an automobile driver should be held accountable for his act of refusing a test under section 13353 while in a state of voluntary intoxication. ▆▆ We therefore hold that, if the requirements of section 13353 are otherwise met, regardless of the degree of his voluntary intoxication or lack of understanding resulting therefrom, when a driver of an automobile refuses or otherwise manifests an unwillingness to take the required test he is subject to the license suspension provisions of that section.

The judgment is reversed. The superior court, on appropriate findings, will enter judgment in favor of appellants.

Molinari, P. J., and Sims, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 3, 1968.