[Civ. No. 4480. Fifth Dist. June 24, 1980.]

JAMES THOMAS THOMPSON, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

356

COUNSEL

George Deukmejian, Attorney General, and Scott D. Rasmussen, Deputy Attorney General, for Defendant and Appellant.

Don A. Ernst for Plaintiff and Respondent.

OPINION

HAMLIN, J.*—

STATEMENT OF THE CASE

Following an administrative hearing, respondent's driver's license was ordered suspended for six months by the Department of Motor Vehi-

*Assigned by the Chairperson of the Judicial Council.

cles. The basis for the department's action was Vehicle Code section 13353, which provides for such suspension when a motorist lawfully arrested for driving under the influence of intoxicating liquor refuses to submit to one of three chemical tests for the purpose of determining the level of intoxication.

After the department ordered the suspension, respondent sought review of the order and was granted a writ of administrative mandate in the superior court. ■ ■ The superior court made its own factual findings and ordered the department to vacate its order of suspension.[1] The findings of the superior court which were the basis for its issuance of the writ may be summarized as follows: (1) the police officer who stopped respondent's vehicle did not adequately meet his burden of warning the motorist of the consequences of refusal to undergo one of the required tests;[2] (2) at the time when the officer was attempting to give the required warning, there was interference from a radio transmission on the police vehicle's radio and this interference prevented a clear and intelligible warning; (3) after the officer attempted to give the section 13353 warning, he asked respondent whether he understood what had just been read; respondent did not answer; and (4) respondent's silence indicated he did not understand the warning. In essence, the court found that respondent could not be penalized for his refusal to submit to a chemical test, because it was not an informed refusal.

On appeal, the department challenges the sufficiency of the evidence to support the court's finding that respondent was not adequately admonished. The department also contends that respondent's license may be suspended even if he did not hear or understand the officer's warning, because respondent took no affirmative steps to communicate his noncomprehension to the officer. Respondent has not filed a brief answering these contentions.

---

[1] It was proper for the court to make its own factual findings, because the "independent judgment" test is the applicable standard of review for the superior court in administrative mandate proceedings following suspension of a driver's license. (See Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 5.62, p. 71 and § 5.71, p. 82; id. (Cont.Ed.Bar Supp. 1977) p. 215.) This is so, because the Department of Motor Vehicles is a state-level agency of legislative origin, and suspension proceedings affect a vested right.

[2] Such a warning is required by Vehicle Code section 13353, which provides in part: "Such person [a motorist stopped for drunk driving] shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months."

## DISCUSSION

I. *Whether there is substantial evidence to support the trial court's finding that respondent was not adequately admonished as required under Vehicle Code section 13353.*

■ When the trial court has employed the independent judgment test in an administrative mandate proceeding, evidentiary review at the appellate level is confined to a determination whether the trial court's findings are supported by substantial evidence.[3] (See, Deering, Cal. Administrative Mandamus (1966) *supra*, § 15.25, pp. 280-281.) The appellate court focuses on the findings of the trial court, rather than those of the administrative agency (*ibid.*). The judgment will be upheld if there is any substantial evidence in support of each of the trial court's essential findings; all contrary evidence will be disregarded on appeal (*ibid.*).

The department contends there is no substantial evidence to support the trial court's finding that respondent was not adequately advised that his license would be suspended if he refused the required tests. The department points out it is undisputed that the officer read respondent the advisement required by the statute; the trial court's memorandum of decision reflects that this was done.[4]

There is, however, evidence that respondent may have been unable to hear (and/or comprehend) parts of the officer's admonishment. Both respondent and the arresting officer (Clark) testified that there were radio transmissions received on the police radio during the giving of the admonishment. It can be inferred that these transmissions were quite loud because they were transmitted over both a speaker inside the patrol vehicle and a loud speaker on the outside of the car. The question is whether the communication was effective.

A tape recording was made by the police during the giving of the admonishment in question. Portions of the recorded admonishment were

---

[3]Of course, the appellate court may also reverse the superior court's judgment if it is based on an erroneous conclusion of law, or if the trial court failed to make a necessary finding (see Deering, Cal. Administrative Mandamus (1966) *supra*, § 15.24, p. 280).

[4]The following is a quote from the court's memorandum of decision: "...though there is no question about the fact that the officer was reading the statutory words, there is no supporting evidence that the driver did hear them over the sound of the radio transmission."

inaudible. When the tape was made, the tape recorder was in the front of the patrol vehicle near the radio, while Officer Clark and respondent were in the back seat during the giving of the advisement. The tape was played for the referee at the administrative hearing. Although this court does not have a copy of the tape, the portions of the tape played at that hearing were transcribed by the court reporter. The following is an excerpt from the reporter's transcription of that portion of the tape played at the hearing:

"Off. Clark:...submit to a test (inaudible)

"Mr. Thompson: (inaudible)

"Off. Clark: Well, the test will be to your benefit.

"Mr. Thompson: (inaudible)

"Off. Clark:...being, 'You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. If you refuse to submit to a test or fail to complete a test *your (inaudible) suspended for a period of six months.* You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, (inaudible) deciding which test to take, or during the administration of the test chosen.' Do you understand what I just read you?

*"Mr. Thompson: (answers?)*

"Off. Clark: Will you take a blood test?

"Mr. Thompson: No.

"Off. Clark: Will you take a breath test?

"Mr. Thompson: (inaudible)

"Off. Clark: Will you take a urine test?

"Mr. Thompson: (answers?)" (Italics added.)

The trial court placed particular emphasis on the fact that the tape recording was inaudible during the portions of the conversation italicized above. Thus, it noted the interference came at the most crucial moments during the advisement. The court also observed that it was unclear from the evidence whether the radio transmissions only interfered with the tape recording or whether they were actually loud enough to interfere with respondent's hearing of the admonishment. The court expressly noted that the testimony of respondent and the officer was in conflict as to the effectiveness of that communication. The court accepted respondent's version because the tape corroborated his testimony that the warning was not effectively communicated to him.

Respondent gave the following testimony concerning the effect of the radio transmissions: "[Question] Were there, in fact, radio transmissions during that admonition that overshadowed, blocked out, . . . Officer Clark's words that he was reading to you?

"[Answer by respondent]: Yes, I believe it was. Especially after hearing the taping." Respondent also testified that the way he actually heard the advisement was that he was "*subject to* losing [his] license for six months for not taking the chemical test." (Italics added.) Respondent testified he did not understand when the advisement was given that if he refused the test, his license would "automatically" be suspended; he said he thought suspension would only result if he were convicted of driving under the influence. Thus, there was evidence that respondent believed (before and after the warning) there was only *a possibility of* a license suspension.

An advisement is insufficient if it only indicates a possibility of suspension in the event of a refusal to undergo the tests. A sufficient advisement must convey to the driver the "strong likelihood" that the adverse result would follow upon refusal (*Giomi* v. *Department of Motor Vehicles* (1971) 15 Cal.App.3d 905, 906-907 [93 Cal.Rptr. 613]). As noted in the *Giomi* case: "The arresting officer advised respondent only that his driver's license *could* be suspended if he failed to take one of the tests. But the code section requires warning that the license *will* be, or *would* be suspended in the event of refusal." (*Id.*, at p. 906.)

The trial court in the present case stated in its findings and conclusions that Officer Clark did not comply with *Giomi's* requirement that the driver be advised he *would* lose his license if he refused the test. Respondent had a prior misconception that he was only "subject to" a

license suspension following a drunk driving conviction, and nothing the officer told him brought home to him that his license *would* be suspended merely by virtue of the refusal to undergo the required tests.

█ There was substantial evidence to support the trial court's finding that the "strong likelihood" of suspension was not *effectively* communicated to respondent. There is no basis for a conclusion by this court that the officer's reading of the advisement was, as a matter of law, adequate.

II  *Whether respondent's noncomprehension of the warning had to be communicated to the officer, in order to preclude a driver's license suspension for refusal to undergo a chemical test for intoxication.*

The department also contends that even if there was evidence to support the trial court's finding that respondent was unable to hear and/or understand the officer's warning, such noncomprehension should not preclude a suspension because respondent's confusion was not apparent and he took no steps to communicate his noncomprehension to the officer. For this reason, the department argues, respondent's answers to the officer's demand for chemical tests must be interpreted as a refusal as a matter of law.

We find no authority which directly supports the department's position on this issue. The department relies on two cases dealing with a driver's refusal to undergo such tests where the driver was confused as to whether he had a right to have counsel present before consenting to such tests. In *Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982 [92 Cal.Rptr. 579], the motorist was advised of his *Miranda* rights in terms indicating that he "had the right to have an attorney present before he said anything." After being fully advised of the consequences of refusal to undergo the tests required by section 13353, the driver refused to submit to any of the tests. At the time of this refusal, the driver believed that an attorney was coming to advise him and he refused the chemical tests for that reason. However, he did not communicate the reason for his refusal to the officers (*id.*, at p. 984). The trial court in *Maxsted* issued a writ of administrative mandate directing the department to vacate its suspension order, because the court concluded that the evidence did not support the administrative agency's finding that the driver refused to submit to a chemical test. The trial court noted that the driver was confused and misled by the officer's

failure to explain that *Miranda* rights did not extend to advice of counsel in reference to taking the tests; thus, the trial court concluded that suspension was improper because the driver's refusal was "not an intelligent refusal." (*Id.*, at p. 985.)

The appellate court reversed, holding that suspension was proper because there is "no duty imposed upon the officer demanding the test to explain the niceties of the implied consent law" (*id.*, at p. 987). The court also observed: "Nor is there any requirement of the applicable law that a refusal of the test be 'intelligent' in order to trigger the sanction of suspension of the driver's license." (*Ibid.*) The court's observation that a refusal need not be "intelligent" was supported by a citation to *Bush* v. *Bright* (1968) 264 Cal.App.2d 788, 791 [71 Cal.Rptr. 123]. The *Maxsted* court described this case as "sustain[ing] the suspension of a driver's license for refusal of a test by a suspect found by the trial court on substantial evidence to have been 'incapable of refusing to so submit because of his extreme intoxication'"[5] (*Maxsted, supra*, 14 Cal.App.3d at p. 987). The *Maxsted* opinion stated that in ascertaining whether there has been a refusal which will justify the suspension sanction, "[t]he determining factor is not the state of the suspect driver's mind, it is the fair meaning to be given his response to the demand that he submit to the chemical test" (*id.*, at p. 986; accord, *Lampman* v. *Department of Motor Vehicles* (1972) 28 Cal.App.3d 922, 927 [105 Cal. Rptr. 101]).

■ The department contends the trial court in the present case should have applied the foregoing test from *Maxsted* and when that standard is applied, the evidence in this case would only support a finding of refusal as a matter of law. The department's argument is that the driver's degree of confusion is not pertinent in this case because that confusion or noncomprehension was not communicated to the officer. The department extracts such a rule from *Maxsted* and *Lampman*. (See also *Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499, 504-505 [81 Cal.Rptr. 800].) In determining whether such a rule should apply in a case such as this, it is significant that both *Maxsted* and *Lampman* dealt with confusion over the extent of *Miranda* rights.

We think those cases should be distinguished from the present case. We interpret *Maxsted* and *Lampman* to hold that as a reasonable per-

---

[5]The *Bush* case seems readily distinguishable from the present case because in *Bush* the driver's inability to comprehend was his own fault.

son the driver in each of those cases, if he was, in fact, refusing the tests because he had not yet received the advice of an attorney, should have communicated that fact to the arresting officer at the time. In this case, the trial court found respondent's confusion arose from the inadequacy of the section 13353 warning itself. If respondent was not aware that his refusal would result in an automatic suspension, it is not reasonable to expect him to have volunteered an explanation for his decision to refuse the tests. Moreover, the source of respondent's confusion (the radio broadcasts) was just as obvious to the officer as it was to the driver. Therefore, it was incumbent on the officer to take measures to be sure the statutory warning was effectively communicated.

We believe that the burden is properly placed on the officer to give the warning required by section 13353 in a manner comprehensible to the driver. When the driver, through no fault of his own, is unable to understand the warning, he should not suffer the consequence of a license suspension.

The judgment is affirmed.

Brown (G. A.), P. J., and Zenovich, J., concurred.