[Civ. No. 53890. First Dist., Div. Three. Nov. 24, 1982.]

ROY EDWARD MORPHEW, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, and Harold W. Teasdale, Deputy Attorney General, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

**OPINION**

**SCOTT, J.**—The department of Motor Vehicles (hereafter DMV) appeals from a judgment of the Superior Court of Monterey County granting a peremptory writ of mandate to vacate an order suspending respondent's driver's license.[1] Respondent has not filed a brief. We have concluded that the order of

---

[1]Respondent's license had been ordered suspended pursuant to Vehicle Code section 13353, the "implied consent" law. At the time of the offense, section 13353 provided in pertinent part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months. [¶] The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, and he shall be advised by the officer that he has such choice. . . . [¶] (b) If any such person refuses the officer's request to submit to, or fails to complete, a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to, or failed to complete, the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months." (Stats. 1978, ch. 911, § 4, p. 2872.) Subsequent

the DMV was correct and that the judgment of the superior court should be reversed.

At the administrative hearing before the DMV, Monterey Police Officer Tognotti testified that at approximately 2 a.m. on January 25, 1980, he noticed respondent Roy Morphew driving with excessive speed, rapid acceleration, and without maintaining control of his vehicle. Respondent displayed the typical symptoms of intoxication when he exited his vehicle, that is, lack of balance, odor of alcohol, slurred speech, and bloodshot eyes. Owing to uneven terrain at the location of the stop, the arresting officer transported respondent to the police station to perform the field sobriety test.

En route to the station, the officer advised respondent that he had a choice between a blood, breath, or urine test, and that the officer would read him something pertaining to the test when they arrived at the station so that respondent could make up his mind.

Respondent failed the field sobriety test administered at the police station. Thereupon, the officer attempted three times to read respondent a statement explaining the provisions of Vehicle Code section 13353.[2] Respondent listened as the officer read. The officer succeeded each time in reading one-quarter to one-half of the statement, at which point respondent interrupted the officer by approaching him and stating that he had passed the sobriety test. Each time, the officer instructed respondent to return to the place where he had been standing, and recommenced the admonishment. As respondent interrupted the officer the third time, he approached the officer and attempted to strike him with his fist. Officer Tognotti and another officer restrained respondent and placed him in a cell. Before they placed him in the cell, respondent, whose language was becoming very abusive, said, "I am not going to take the fucking test." Officer Tognotti considered respondent's behavior a refusal of the chemical test. The officer never reached that portion of the statement that explained that failure to submit to or to complete a chemical test would result in a six-month suspension of the respondent's driver's license.

---

amendments of section 13353 are immaterial to this appeal. (See Stats. 1980, ch. 67, § 1, p. 176; Stats. 1980, ch. 675, § 1, p. 1870; Stats. 1981, ch. 935, p. 3533; Stats. 1981, ch. 939, p. 3550.)

[2]The officer attempted to read the following statement to respondent: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test or fail to complete a test your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney or to have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable or state you are incapable, of completing the test you choose, you must submit to and complete any of the remaining tests or test."

Respondent denied that he was told he had a choice among three tests, and denied that the officer ever attempted to read anything to him. He claimed that after being placed in the holding cell, he asked about an "alcohol content" test, but the officer ignored the question. He also acknowledged that when he was put in the holding cell, he was very mad and hostile, and took his boots off and beat on the plexiglass window.

Among its findings of fact, the trial court found: "(2) The arresting officer never completed giving petitioner the instruction that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 6 months.

"(3) The arresting officer had sufficient opportunity to advise petitioner that he would lose his license for 6 months if he failed or refused to complete a chemical test; opportunity existed to advise petitioner in the police car on the way to substation; and such opportunity existed once at the substation.

"(4) Petitioner's own actions during a portion of his time at the substation did not preclude the arresting officer from telling petitioner that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 6 months during a substantial period of time while petitioner was in custody at the substation."

The court made the following conclusions of law: "(1) Pursuant to California Vehicle Code § 13353, petitioner should have been told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 6 months. [¶] (2) Suspension of petitioner's driving privileges for his refusal to submit to a chemical test without such an admonition is thus improper."

We recognize that the Courts of Appeal have disagreed as to whether the "independent judgment" test is the applicable standard of review for the superior court in administrative mandate proceedings following suspension of a driver's license (cf. *McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 601 [159 Cal.Rptr. 49], and *McGue* v. *Sillas* (1978) 82 Cal.App.3d 799, 806 [147 Cal.Rptr. 354]), and that the question is currently pending before the Supreme Court. (*Berlinghieri* v. *Department of Motor Vehicles* (Cal.App.) hg. granted July 22, 1982.*) We need not address that issue, however, as the question here is not the sufficiency of the evidence to support either the findings of the DMV or the trial court. It is apparent from the transcript of the proceeding before the trial court and from its findings that the court believed that respondent did interrupt the reading of the admonition, but concluded that despite those interruptions, the officer should have persisted until he was able to inform respondent that his license would be suspended if he refused a test.

*Reporter's Note: For Supreme Court opinion see 33 Cal.3d 392 (1983) [188 Cal.Rptr. 891, 657 P.2d 383].

(1) The question, then, is one of law: does section 13353 require an officer to attempt repeatedly to admonish the person arrested, despite his interruptions and other uncooperative conduct, until the arrestee is willing to listen? We think not.

The implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient, and accurate system of detection and prevention of drunken driving. (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 77 [177 Cal.Rptr. 566, 634 P.2d 917].) One purpose of section 13353 is to administer one of the prescribed chemical tests as soon as possible after arrest in order to discover the suspect's blood alcohol content at the time he was arrested, since alcohol in the blood system dissipates quickly. " '. . . To be of any probative value the test must be "near" to the offense in point of time. If it is not taken promptly after the arrest, it proves nothing.' [Citations.]" (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 599 [130 Cal.Rptr. 91].)

In *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867 [71 Cal.Rptr. 111] the inebriate refused to take the chemical test. The arresting officer then left the station to resume other duties. Thirty to forty-five minutes later, the inebriate stated that he had changed his mind and would submit to a test. The arresting officer was called but refused to return. (*Id.*, at p. 869.) The court upheld the driver's license suspension pursuant to section 13353, finding that "[i]t would be inconsistent with the purpose of the statute to hold that either [the arresting officer], or the officers on duty at the police station, were required to turn aside from their other responsibilities and arrange for administration of a belated test when once appellant had refused to submit . . . ." (*Id.*, at p. 870.)

The facts in *Skinner* v. *Sillas, supra,* 58 Cal.App.3d 591 are similar, except that when respondent requested the test approximately four and one-half hours after his initial refusal, a police officer other than the arresting officer did administer the test. (*Id.*, at p. 598.) Nevertheless, the court upheld the driver's license suspension based upon respondent's refusal, stating that "it would be inconsistent with the purposes of the statute to require the officer to sit around and wait until the suspect believes he is ready to take the test. (See *Zidell* v. *Bright, supra.*)" (*Id.*, at p. 599.)

*Noli* v. *Department of Motor Vehicles* (1981) 125 Cal.App.3d 446 [178 Cal.Rptr. 5] represents a situation where the arresting officer took a "combative" inebriated driver to the community medical center. The officer admonished the driver in the parking lot. The driver replied that he would submit to a urine test. Due to the driver's behavior, the officers were unwilling to remove his handcuffs at the medical center to allow him to take the urine test. Accordingly, they told him that the urine test would have to be taken at the jail, but that the blood and breath test were available at the medical center only, and that if he were transported to the jail and failed to complete the urine test, he

would not have another opportunity to take the blood or breath tests. The driver insisted that he would take only the urine test. At the jail, he was unable to complete the urine test. (*Id.*, at pp. 448-449.) The court upheld the suspension of the driver's license. "We hold that in the circumstances here presented, section 13353 did not require the officers to offer appellant another opportunity to choose one of the two tests he had categorically refused, when it would mean transporting him back to the Medical Center to do so, particularly when there was little reason to believe he would submit to either of those tests if the opportunity were renewed. To hold otherwise would be to exalt form over substance in the interpretation of the statute and make the arresting officers subservient to the caprice of an inebriated and uncooperative arrestee. The officers had more important things to do than play games with appellant in his condition. What it boils down to is that one who is lawfully under arrest for drunk driving should not be able to frustrate the procedure contemplated by section 13353 and defeat its purpose by being combative and uncooperative with the arresting officers." (*Id.*, at p. 450.)

Here too it would be inconsistent with the purpose of section 13353 to hold that the arresting officer should have persisted in his attempt to admonish respondent, regardless of his interruptions and obstreperous behavior, until respondent was ready to listen. To so hold would be to allow the arrestee to control the timing of the blood alcohol test, and thus make the arresting officer "subservient to the caprice of an inebriated and uncooperative arrestee." (*Noli, supra*, 125 Cal.App.3d at p. 450.) Nor does the fact that the officer did not immediately admonish respondent in the police car on the way to the substation alter our conclusion. The officer was not required to anticipate that respondent would become unruly at the substation.

*Bush* v. *Bright* (1968) 264 Cal.App.2d 788 [71 Cal.Rptr. 123] and *Thompson* v. *Department of Motor Vehicles* (1980) 107 Cal.App.3d 354 [165 Cal.Rptr. 626] reinforce our conclusion that a person may not complain of the suspension of his driver's license if, by his own actions, he frustrates the admonishment or the administration of the chemical test. In *Bush*, the court rejected the defense to license suspension under section 13353 that a person was so intoxicated at the time of his arrest that he was incapable of refusing to submit to a chemical test. (*Bush, supra*, at pp. 791-793.) The court stated that a defense of this type "would lead to absurd consequences—the greater the degree of intoxication of an automobile driver, the lesser the degree of his accountability under the statute. It would invalidate section 13353 as to grossly intoxicated drivers and frustrate the purpose of the Legislature." (*Id.*, at p. 792.) A driver should be held accountable for refusing or otherwise manifesting an unwillingness to take the chemical test while in a state of voluntary intoxication. (*Id.*, at p. 793.) In *Thompson, supra*, 107 Cal.App.3d 354, the court held that where a communication over the police radio which was heard by both the officer and the

driver drowned out that portion of the admonishment informing the driver that refusal to complete a chemical test would result in a suspension of his license, the admonishment was not effectively communicated, and the driver's noncomprehension should not have resulted in license suspension. The court noted, "The *Bush* case seems readily distinguishable from the present case because in *Bush* the driver's inability to comprehend was his own fault." (*Thompson, supra,* at p. 362, fn. 5.) Further, "[w]hen the driver, through no fault of his own, is unable to understand the warning, he should not suffer the consequence of a license suspension." (*Id.,* at p. 363.) *Thompson* clearly suggests that when a driver's own actions prevent admonishment or administration of the chemical test, he may not complain that his license was improperly suspended.

"Remedial statutes such as section 13353 'must be liberally construed to effect their objects and suppress the mischief at which they are directed. They should not be given a strained construction that might impair their remedial effect.'" (*Bush* v. *Bright, supra,* 264 Cal.App.2d at p. 792.) We hold, therefore, as a matter of law that respondent's license was properly suspended under section 13353 although the arresting officer did not admonish him that failure to submit to the chemical test would result in a six-month license suspension, where it was respondent's own obstreperous conduct which prevented the officer from completing the admonition and which led the officer to conclude that the respondent had refused to submit to the test. The officer directs the proceedings under section 13353, and the inebriated driver, by obstreperous behavior, may subjugate neither the arresting officer nor the statute to his whims.

Judgment is reversed with directions to reinstate the order of the DMV suspending respondent's driver's license.

White, P. J., and Barry-Deal, J., concurred.