Grover, J.
*43 Before the Department of Motor Vehicles may suspend a driver's license for a driver's refusal to submit to a chemical test to determine the alcohol content of his or her blood, the driver "shall be told [by the arresting officer] that his or her failure to submit to ... the required chemical testing will result in ... the suspension of the person's privilege to operate a motor vehicle for a period of one year." ( Veh. Code, § 23612, subd. (a)(1)(D).) The question presented here is whether an arresting officer is relieved of the statutory duty to provide that admonition when the suspected drunk driver engages in disruptive behavior during his or her arrest. We in no way intend to condone disruptive behavior by those arrested on suspicion of driving under the influence of alcohol. We conclude, however, that the Vehicle Code requires an arresting officer to at least attempt to provide the required admonition. Because it is undisputed that the officer who arrested appellant Edward Munro never admonished him about the consequences of refusing chemical testing, we must reverse the judgment.
I. TRIAL COURT PROCEEDINGS
A. MUNRO'S ARREST
According to police reports in the administrative record, an officer responded to a report of a midnight single-vehicle collision. The officer saw a *44 Porsche SUV on the edge of the road moving forward and back a few feet in each direction; one front tire was missing and the wheel's rim and brake system were extensively damaged. Munro got out of the SUV's driver's seat and the officer noticed he was "extremely unsteady on his feet." When talking to Munro, the officer observed that his breath smelled like alcohol, his eyes were red, his speech was slurred, and he seemed disoriented. Munro told the officer he had consumed " '[t]wo drinks, probably.' " (A few minutes later Munro denied having had any alcohol that night.) The officer asked Munro to lean against the patrol car because it looked like Munro might fall over. Munro refused. The officer decided to place Munro in handcuffs, and rested him against the hood of his patrol car.
The officer interviewed Munro, who denied being the driver and denied consuming any alcohol. The officer attempted to conduct a field sobriety test by asking Munro to follow the tip of his pen with his eyes. Munro responded by closing his eyes. The officer read Munro the Preliminary Alcohol Screening admonition, and Munro refused to take the test. About 20 minutes after arriving, the officer arrested Munro on suspicion that he was driving under the *847 influence of alcohol. ( Veh. Code, § 23152, subd. (a).) Munro told the officer "several times that he would be refusing post-arrest chemical testing." The officer told him that he would "sit him in the rear of [the patrol car] and then read him something about his refusal." The officer noted in his report, "it was my intention to read Munro the Chemical Test Refusal Admonition from the APS form at that time."
When the officer seated Munro in the back seat of the patrol car, Munro "quickly pulled his knees toward his chest" and "simultaneously pulled his handcuffed wrists to the back of his knees in an attempt to bring his hands to the front of his body." The officer pulled Munro out of the car and placed him back in the car with his hands in the proper position, which the officer accomplished despite Munro "flex[ing] and stiffen[ing] his entire body" to prevent being returned to the car.
As the officer started to drive Munro to jail, he "saw Munro slide onto his back and slip the handcuffs from behind his back, under his legs, and to the front of his body." Munro then started kicking the rear window of the patrol car while trying to slip his hands out of the handcuffs. The officer removed Munro from the car again and, with the help of two other officers, placed Munro into a "WRAP" restraint device. Munro "violently resisted officers by kicking his legs and attempting to 'buck' officers off of him" as they restrained him. No one was injured during that process.
About 30 to 35 minutes elapsed between the officer responding to the scene and Munro being restrained. It is undisputed that the officer never read *45 the chemical test refusal admonition. On the DMV chemical test refusal admonition form, the officer wrote "unable to read due to combative state of subject." (Capitalization omitted.)
B. DMV PROCEEDINGS AND PETITION FOR WRIT OF MANDATE
Munro requested an administrative hearing to challenge the DMV's suspension of his driver's license for refusing chemical tests. Munro testified that his behavior that lead the officer to believe he was drunk stemmed from having hit his head during the accident. As for his disruptive behavior after being arrested, Munro claimed he felt claustrophobic in the police car and that the handcuffs were hurting his wrists.
The hearing officer issued a written Notification of Findings and Decision following the hearing. The hearing officer determined that Munro's "testimony as to events is not credible." Regarding the chemical testing admonition, the hearing officer reasoned that Munro's "unruly conduct during the admonition" prevented the officer from "completing the warning that a refusal would result in a license withdrawal action." The hearing officer found that the police officer's notation on the admonition form "clearly indicates that the officer intended to give or read the Chemical Test Refusal admonition," and that Munro's "behavior prevented the officer from performing his duties." The hearing officer concluded that Munro "was uncooperative and combative toward the officer [such] that the officer decided it was futile to even attempt to give the admonition."
Munro challenged the hearing officer's decision in the trial court by petition for writ of mandate. The trial court denied the petition by written order after a hearing. The court found that Munro "knew [the officer] was going to give him information related to his stated refusal to submit" to chemical testing, and that it was "not incumbent upon [the officer] to wait until *848 [Munro] calmed down at some other point on the way to county jail to successfully execute his intended plan to read the admonishment."
II. DISCUSSION
This appeal is about a single issue: whether Munro's disruptive behavior relieved the police officer of his statutory duty to admonish him about the consequences for refusing to submit to chemical testing. (See Veh. Code, §§ 23612, subd. (a)(1)(D) ; 13353, subd. (d)(4); all statutory references are to this Code.)
A. STANDARD OF REVIEW
Section 13559, subdivision (a) states that a trial court reviewing a license suspension may order the DMV to rescind the suspension order if the court *46 "finds that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record." "A driver's license is a fundamental right for the purpose of selecting the standard of judicial review of an administrative decision to suspend or revoke such license." ( Berlinghieri v. Department of Motor Vehicles (1983) 33 Cal.3d 392, 398, 188 Cal.Rptr. 891, 657 P.2d 383.) A trial court must exercise its independent judgment when reviewing the DMV's decision to suspend a driver's license. ( Bussard v. Department of Motor Vehicles (2008) 164 Cal.App.4th 858, 863, 79 Cal.Rptr.3d 414.) On appeal, our review is generally limited to determining whether substantial evidence supported the trial court's findings. ( Ibid. ) But when, as here, the appeal turns on a question of statutory interpretation, we exercise our independent judgment. ( Ibid. )
B. IMPLIED CONSENT AND THE REQUIRED ADMONITION
Drivers of vehicles in California are deemed to have consented to chemical testing to determine the alcohol content of their blood if they are lawfully arrested on suspicion of driving under the influence of alcohol. ( § 23612, subd. (a)(1)(A).) When a suspected drunk driver is arrested, the person "shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine," possible imprisonment, and "the suspension of the person's privilege to operate a motor vehicle for a period of one year." ( § 23612, subd. (a)(1)(D).) The implied consent system "was designed to secure the civil cooperation of all persons privileged to drive in providing objective scientific evidence of intoxication (or sobriety) when the privilege is being exercised." ( McDonnell v. Department of Motor Vehicles (1975) 45 Cal.App.3d 653, 662, 119 Cal.Rptr. 804.) The system was "intended to obviate incidents of violence that may be expected when a recalcitrant inebriate is tested by force as under proper circumstances the police have a right to do." ( Ibid. )
Section 13353 provides that if "a person refuses the officer's request to submit to, or fails to complete, a chemical test," the DMV shall suspend the person's "privilege to operate a motor vehicle for a period of one year." (§ 13353, subd. (a)(1).) (The suspension period increases if the person has certain prior convictions or administrative violations not at issue here (§ 13353, subd. (a)(2), (a)(3) ).) The DMV is required to conduct an administrative review of the record when a license will be suspended, which encompasses the following issues: "(1) Whether the peace officer had reasonable cause to believe the person had been driving a motor vehicle [under the influence of alcohol; ¶] (2) Whether the person *849 was placed under arrest [; ¶] (3) Whether the person refused to submit to, or did not complete, the test *47 or tests after being requested by a peace officer[; ¶ and] (4) Whether, except for a person ... who is incapable of refusing, the person had been told that his or her driving privilege would be suspended or revoked if he or she refused to submit to, or did not complete, the test or tests." (§ 13353, subd. (d)(1)-(d)(4).) A driver faced with a license suspension may request a hearing to contest the DMV's decision (§§ 13353, subd. (e); 13358), and may challenge the results of that hearing in the trial court by petition for writ of mandate. (§ 13559.)
Courts have consistently required relatively strict compliance with the duty to admonish suspected drunk drivers about the consequences of refusing chemical testing. The Supreme Court reversed a license suspension in Decker v. Department of Motor Vehicles (1972) 6 Cal.3d 903, 101 Cal.Rptr. 387, 495 P.2d 1307, where a police officer admonished Decker about the consequences of refusing a chemical test but said merely that Decker's license " 'could be suspended.' " ( Id. at p. 905, 101 Cal.Rptr. 387, 495 P.2d 1307.) The court concluded that the officer's admonition "misrepresented the legal significance of a refusal to take a chemical test by implying that the Department might decide not to suspend Decker's license in spite of his refusal." ( Id. at p. 906, 101 Cal.Rptr. 387, 495 P.2d 1307.) A Court of Appeal reversed a license suspension where there was evidence the suspected drunk driver could not hear the admonition because it was drowned out by sound from a police radio. ( Thompson v. Department of Motor Vehicles (1980) 107 Cal.App.3d 354, 358-361, 165 Cal.Rptr. 626.) And another court reduced a one-year license suspension to a six-month suspension where the officer incorrectly informed the suspect that his license would be suspended for six months instead of one year. ( Daly v. Department of Motor Vehicles (1986) 187 Cal.App.3d 257, 262, 232 Cal.Rptr. 7 ( Daly ).)
Courts have upheld license suspensions based on officers' substantial compliance with the duty to admonish suspected drunk drivers. In Ormonde v. Department of Motor Vehicles (1981) 117 Cal.App.3d 889, 892-893, 173 Cal.Rptr. 79, a license suspension was upheld where the officer initially incorrectly stated that "defendant 'could' lose his license if he refused a test" but then later gave the correct admonition. (Accord Smith v. Department of Motor Vehicles (1969) 1 Cal.App.3d 499, 502-503, 81 Cal.Rptr. 800 [suspension upheld where proper admonition was followed later by the statement, " 'chances are that you will lose your license' "].) And in Janusch v. Department of Motor Vehicles (1969) 276 Cal.App.2d 193, 194, 197, 80 Cal.Rptr. 726, the court affirmed Janusch's license suspension where he was initially informed his license "would probably be revoked ," and later was provided the proper admonition.
*48 C. ADMONISHING UNCOOPERATIVE ARRESTEES
Courts have allowed less exacting compliance with the statutory duty to admonish in cases involving disruptive suspects. In Noli v. Department of Motor Vehicles (1981) 125 Cal.App.3d 446, 178 Cal.Rptr. 5 ( Noli ), Noli was arrested on suspicion of drunk driving and taken to a medical center where an officer properly admonished him about the consequences of refusing chemical testing. ( Id. at p. 448, 178 Cal.Rptr. 5.) Noli refused a blood or breath test, but agreed to a urine test. Noli could not complete the urine test at the medical center because he was too combative to be let out of handcuffs. He was warned "that the urine test would have to be given at the jail, but that the blood test and breath test could only be given at the Medical *850 Center, and if appellant was transported to the jail for the urine test and failed to complete that test, he would not have another opportunity to take the blood test or the breath test." ( Id. at pp. 448-449, 178 Cal.Rptr. 5.) Once they arrived at the jail, Noli reported that he was unable to urinate and no urine sample was ever produced. (Id. at p. 449, 178 Cal.Rptr. 5.) The Court of Appeal affirmed Noli's license suspension, reasoning that "section 13353 did not require the officers to offer appellant another opportunity to choose one of the two tests he had categorically refused, when it would mean transporting him back to the Medical Center to do so, particularly when there was little reason to believe he would submit to either of those tests if the opportunity were renewed." ( Id. at p. 450, 178 Cal.Rptr. 5.) The court explained that "one who is lawfully under arrest for drunk driving should not be able to frustrate the procedure contemplated by section 13353 and defeat its purpose by being combative and uncooperative with the arresting officers." ( Ibid. )
Another case involving a disruptive suspect is Morphew v. Department of Motor Vehicles (1982) 137 Cal.App.3d 738, 188 Cal.Rptr. 126 ( Morphew ). Morphew was arrested on suspicion of drunk driving. En route to the police station, an officer told Morphew he had the choice between a blood, breath, or urine test. Once at the station, "the officer attempted three times" to read the chemical testing admonition. ( Id. at p. 740, 188 Cal.Rptr. 126.) The first two times, the officer read some of the admonition and then Morphew "interrupted the officer by approaching him and stating that he had passed the sobriety test." During the third attempt, Morphew "approached the officer and attempted to strike him with his fist." ( Ibid. ) The officer never reached the portion of the admonition about license suspension. On appeal from the trial court's decision that Morphew's license should be reinstated based on the officer's failure to complete the admonition, the Court of Appeal determined that "it would be inconsistent with the purpose of section 13353 to hold that the arresting officer should have persisted in his attempt to admonish respondent, regardless of his interruptions and obstreperous behavior, until respondent was ready to listen." ( Id. at pp. 741, 743, 188 Cal.Rptr. 126.) The Morphew court reasoned that the trial court's decision would "allow the arrestee to control *49 the timing of the blood alcohol test, and thus make the arresting officer 'subservient to the caprice of an inebriated and uncooperative arrestee.' " ( Id. at p. 743, 188 Cal.Rptr. 126.) The court concluded that Morphew's license was properly suspended even though the arresting officer did not complete the admonition "where it was respondent's own obstreperous conduct which prevented the officer from completing the admonition." ( Id. at p. 744, 188 Cal.Rptr. 126.)
D. MUNRO WAS ENTITLED TO AN ADMONITION
Undisputed facts in the record show that the arresting officer here never read Munro the required admonition. The arresting officer noted in his report that he told Munro he was going to "read him something about his refusal," and that it was the officer's intention to read the chemical testing admonition. But what was going to be read was not made known to Munro. The DMV's argument that Munro somehow "knew that [the officer] was going to read him his rights about chemical testing" is not supported by the record. The officer expressly acknowledged on the DMV admonition form that he did not read the chemical testing admonition, noting: "unable to read due to combative state of subject." (Capitalization omitted.) And nothing in the record suggests that Munro *851 continued to be disruptive after he was physically restrained in the WRAP device.
The DMV cites no case, and we have found none, where a court has excused the absence of an attempt to satisfy the statutory duty to admonish a suspected drunk driver about the consequences of refusing a chemical test. The DMV relies heavily on Morphew and Noli , and we agree with the proposition that drunk driving suspects should not be able to use disruptive conduct to frustrate the chemical testing procedure. The DMV also correctly notes the Morphew court's observation that an arresting officer does not have to wait to admonish a suspect until he or she is ready to listen. (See Morphew , supra , 137 Cal.App.3d at p. 744, 188 Cal.Rptr. 126.)
We are mindful of Noli's caveat that we not "exalt form over substance in the interpretation of the statute and make the arresting officers subservient to the caprice of an inebriated and uncooperative arrestee. The officers [have] more important things to do than play games ...." ( Noli , supra , 125 Cal.App.3d at p. 450, 178 Cal.Rptr. 5.) The critical distinction for our analysis here is that in Noli and Morphew the arresting officers either admonished or at least attempted to admonish the suspects. In Noli , after a proper admonition the only issue was whether the officers were required to "offer appellant another opportunity to choose one of the two tests he had categorically refused." ( Noli , supra , 125 Cal.App.3d at p. 450, 178 Cal.Rptr. 5.) And in Morphew , after the officer attempted to admonish the suspect three times, the only issue was whether Morphew could evade a license suspension because his obstreperous conduct *50 prevented the officer from completing the admonition. ( Morphew , at p. 744, 188 Cal.Rptr. 126.) We do not quarrel with those decisions; but there is a material difference between attempting to admonish an uncooperative suspect and the invited conclusion here that compliance with a statutorily mandated admonition was altogether unnecessary because of Munro's disruptive and combative behavior.
The DMV argues that requiring officers to at least attempt to comply with their duty to admonish suspected drunk drivers would undermine the purpose of the implied consent laws in " ' "obtain[ing] the best evidence of blood alcohol content while ensuring cooperation of the person arrested." ' " (Quoting Troppman v. Valverde (2007) 40 Cal.4th 1121, 1136, 57 Cal.Rptr.3d 306, 156 P.3d 328.) To the contrary, ensuring that officers properly admonish suspected drunk drivers serves the purpose of the implied consent laws because a reminder of the consequences of refusing chemical testing may result in greater cooperation with an arresting officer.
Several of the DMV's arguments conflate the separate requirements of admonishing a suspect in the first instance and determining whether a properly admonished suspect has refused chemical testing. The DMV contends that our decision will "reward [Munro's] combative behavior," and that Munro is merely attempting to "take advantage of his own disruptive behavior." We agree with the DMV that there appears to be ample evidence in the record to support a finding that Munro refused chemical testing. But that is a separate issue from the arresting officer's duty to admonish Munro about the consequences of his refusal. As another court has observed, "[p]roper warning of the consequence of refusal is an element essential to the suspension of a driver's license." ( Daly , supra , 187 Cal.App.3d at p. 261, 232 Cal.Rptr. 7.)
The DMV appears to contend that we should relieve the officer of his duty to admonish Munro because blood alcohol *852 levels "dissipate over time, so it is imperative for arresting officers to take a chemical test of an arrestee's blood alcohol content as soon as possible after the arrest." While certainly true, the DMV offers no persuasive justification for excusing the requirement that the officer read an admonition that would take at most a few minutes. The record shows that Munro was incapacitated through the use of the WRAP device within 30 to 35 minutes after the first officer arrived at the scene. There was ample time for one of the four responding officers to admonish Munro about the consequences of refusing chemical testing once he was restrained and no longer posed any realistic danger to the officers.
We emphasize that Munro's conduct was totally unacceptable and created unnecessary risks for his own safety and that of the officers involved. But the Vehicle Code is clear that an arresting officer must instruct a *51 suspected drunk driver of the consequences of refusing chemical testing ( §§ 23612, subd. (a)(1)(D) ; 13353, subd. (d)(4) ), and case law has consistently required arresting officers to at least attempt to provide that mandatory admonition even to uncooperative suspects. Because it is undisputed that the officer here made no attempt to admonish Munro, we are compelled to conclude that the license suspension must be reversed.
III. DISPOSITION
The judgment is reversed. The trial court is directed to enter a new order granting Munro's petition. Each party to bear its own costs on appeal.
I CONCUR:
Premo, Acting P. J.