Filed 12/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEVE LOUIS ELMORE, Plaintiff and Appellant, v. STEVE GORDON, as Director, etc., Defendant and Respondent. | B308328 Los Angeles County Super. Ct. No. 19STCP03929 |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge. Affirmed.

Markelz Law Group and Christopher Markelz for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Gabrielle H. Brumbach, Supervising Deputy Attorney General, and Victoria Jalili, Deputy Attorney General, for Defendant and Respondent.

_____

A little past midnight and about 15 yards north of the Mexican border, Miguel Ponce of the Border Patrol sat in his parked cruiser.  He was on the lookout for people cutting through the border fence and running to large vehicles, like minivans, that would take them away.  After 17 years on the job, Ponce anticipated this tactic.

A black minivan drove into this restricted area, which was off limits to the general public; this commercial lot was limited to daytime tractor-trailers bound for Mexico and waiting to pass through the nearby port of passage between the nations.  Cars entering this area by mistake and seeing a patrol car typically asked for directions.  "They don't normally just go in, do a U-turn and then take off."

There was "a lot of ambient lighting" that made Ponce's marked car "pretty visible."  The setting meant the minivan driver saw Ponce's car.  The minivan got about 20 yards from Ponce and then U-turned abruptly; its tires made a "squelch" sound.  Ponce heard the driver rev his engine as the minivan "fled off" at a "high rate of speed" that was "definitely faster than what cars drive in that area normally."  Ponce decided to follow and to stop the minivan.

Driving the minivan was Steve Louis Elmore, who avoided eye contact and spoke with slurred speech.  He smelled of alcohol.  Elmore's eyes were bloodshot and watery.  It appeared he had urinated on himself.

Police warned Elmore his license would be suspended or revoked if he refused to take a chemical test for alcohol.  Elmore refused.

Officials obtained a warrant for a blood draw showing Elmore's alcohol level was more than twice the limit.

The Department of Motor Vehicles suspended Elmore's driver's license for one year because he refused to submit to a blood or breath test. (See Veh. Code, § 13353.) Elmore challenges this suspension with two arguments.

Elmore's first argument is Ponce's temporary investigative stop of him was illegal. This is incorrect. Ponce reasonably suspected the minivan was involved with illegal smuggling. Objective circumstances justified his decision to stop it and to investigate. Sighting and then fleeing police in a high crime area creates a reasonable suspicion that warrants a *Terry* stop. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124–125; see also *Kansas v. Glover* (2020) __ U.S. __, __ [140 S.Ct. 1183, 1188]; *People v. Silveria* (2020) 10 Cal.5th 195, 236.)

The federal law on this topic governs us. We are not permitted a state law departure. (*People v. Souza* (1994) 9 Cal.4th 224, 232–233.)

Judges must be alert for implicit bias in such situations, but Elmore does not argue this factor was in play. Nothing suggests Ponce could see Elmore before deciding to stop the minivan.

Elmore's second argument is police failed to read a particular sentence when admonishing him that his refusal to submit to chemical testing would result in a license suspension. We italicize the key words in the omitted sentence: "Refusal or failure to complete a test will also result in a *fine and imprisonment* if this arrest results in a conviction of driving under the influence."

This second argument is insubstantial. Police warned Elmore his driver's license would be suspended if he refused

3

chemical testing. He refused. His license was suspended. Elmore does not contest these facts. He has no valid complaint.

The Department is not seeking a *fine or imprisonment*. When police give an incomplete admonition about the consequences of refusing chemical testing, the law limits the permissible sanction to the extent of actual notice. (See *Daly v. Department of Motor Vehicles* (1986) 187 Cal.App.3d 257, 262.) This counts as "common sense." (*Id.* at p. 259.)

Elmore cites cases with holdings that are not on point. (See *Troppman v. Valverde* (2007) 40 Cal.4th 1121, 1126, 1135–1139 & fn. 11 [when officer found driver passed out in a parked car, license could be suspended without proof of driving immediately before arrest]; *Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 768 [Veh. Code, § 23152 requires proof of volitional vehicle movement]; *People v. Balov* (2018) 23 Cal.App.5th 696, 702–704 [defendant's consent to a blood test was voluntary]; *Munro v. Department of Motor Vehicles* (2018) 21 Cal.App.5th 41, 49–51 [license may not be suspended when officer failed to admonish driver that refusal to submit to test would result in suspended license]; *People v. Mason* (2016) 8 Cal.App.5th Supp. 11, 18–34 [court suppressed unconsented blood test]; *Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 989–1005 [blood and breath tests were inadmissible]; *Hughey v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 752, 757–768 [skull fracture from crash negated mental capacity to refuse chemical tests]; *Thompson v. Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 357–360 [noisy radio interference made admonition ineffective]; *McDonnell v. Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662–663 [illness triggered by alcohol consumption that produces the symptoms of intoxication

4

is not a defense to suspension where the arresting officer has reasonable cause to believe driver was intoxicated]; *Giomi v. Department of Motor Vehicles* (1971) 15 Cal.App.3d 905, 906–907 [sufficient advisements must convey the strong likelihood adverse results "would" follow upon refusal; the verb "could" is too weak].)

Elmore also cites the holding from *People v. Superior Court* (*Hawkins)* (1972) 6 Cal.3d 757, which a constitutional amendment abrogated. (*People v. Deltoro* (1989) 214 Cal.App.3d 1417, 1422–1426.)

## DISPOSITION

We affirm the order and award costs to the respondent.

WILEY, J.

We concur:

GRIMES, Acting P. J.

STRATTON, J.

5