[Civ. No. 39633. Second Dist., Div. Two. Nov. 22, 1972.]

SYLVIA JEAN LAMPMAN, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Defendant and Appellant.

Dale & Dale and James M. Dale for Plaintiff and Respondent.

**OPINION**

**FLEMING, J.**—The Department of Motor Vehicles, pursuant to Vehicle Code section 13353, suspended Sylvia Jean Lampman's driver's license for six months for her failure to submit to a chemical test to determine the alcoholic content of her blood. By writ of mandate the superior court vacated the department's suspension order. The department has appealed.

At 2:20 a.m. on 31 January 1971 California Highway Patrol Officer Patterson arrested Miss Lampman for driving a vehicle on the Ventura Freeway while under the influence of intoxicating liquor. He advised her she had a right to remain silent and a right to an attorney. When she was asked if she understood her rights, she remained silent. Officer Patterson then advised Miss Lampman that she was obligated to submit to a chemical test and that failure to submit to the test would result in the suspension of her driving privilege for six months. She said nothing. He next read to her from a prepared form: "You are requested to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. A refusal will result in the suspension of your driving privilege for a period of six months. You do not have the right to have an attorney present before stating whether you will submit to a test, before deciding which test to take or during the administration of the test chosen." Miss Lampman remained silent and did not respond to the request to submit to a test. In the patrol car Officer Patterson again requested that she submit to a test and again read the prepared form. Instead of replying Miss Lampman complained of an eye infection and Officer Patterson pursuant to police department policy took her to a hospital for treatment.

At the hospital Miss Lampman asked if she could telephone her attorney. Whether or not she did so is disputed on the record. On the way from the hospital to the jail, Officer Patterson once more advised Miss Lampman of her obligation to take a chemical test and again read the form to her. She remained silent. In all, Miss Lampman was advised of the chemical test requirement four times. On each occasion she remained mute. No chemical test was given. Officer Patterson testified that if Miss Lampman had consented to a blood test it would have been given in the hospital and that if she had consented to a urine test it would have been given in the women's section of the Van Nuys jail. We take judicial notice that a breath test would ordinarily have been given at the police station.

At the hearing before the Department of Motor Vehicles both Officer Patterson and Miss Lampman testified. At the conclusion of the hearing Miss Lampman's license was suspended by the department for six months.

Thereafter the superior court, on the transcript of the testimony given before the Department of Motor Vehicles, found that by driving a motor vehicle upon the highway Miss Lampman had given her consent to a chemical test; that the arresting officer advised Miss Lampman she had an obligation to take a chemical test but that his statement was merely foundational and had not been followed by conduct or further questioning

to ascertain whether she would or would not submit to a chemical test; that Miss Lampman remained silent in reliance upon the arresting officer's statement she had a right to remain silent. The court concluded Miss Lampman's silence did not constitute a failure to submit to a chemical test within the meaning of Vehicle Code, section 13353, and it ordered the restoration of her driving privileges. The court also found, but did not conclude as a matter of law, that the department had abused its discretion in failing to issue subpoenas in blank to respondent's attorney prior to the departmental hearing.

■ 1. The principal issue on appeal is whether Miss Lampman's silence in the face of Officer Patterson's request to submit to a chemical test constituted a failure to submit to a test under Vehicle Code section 13353. We have concluded that Miss Lampman's silence in the face of repeated requests that she submit to a chemical test and repeated requests that she choose a test to determine the alcoholic content of her blood constituted a failure to submit to a chemical test within the meaning of Vehicle Code section 13353. In our view the contrary findings of the superior court are unsupported by evidence. (*Merrill* v. *Department of Motor Vehicles*, 71 Cal.2d 907, 914 [80 Cal.Rptr. 89, 458 P.2d 33]; *Goodman* v. *Orr*, 19 Cal.App.3d 845, 848-849 [97 Cal.Rptr. 226]; *Maxsted* v. *Department of Motor Vehicles*, 14 Cal.App.3d 982, 985 [92 Cal. Rptr. 579]; *Bush* v. *Bright*, 264 Cal.App.2d 788, 791 [71 Cal.Rptr. 123].) The statute requires an arresting officer to tell the arrested driver that his failure to submit to a test will result in a six-month suspension of his driving license; that he has the choice of a blood, breath, or urine test; that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen. Officer Patterson complied with each of these specific requirements. It should have been clear to Miss Lampman, once she had been informed "You do not have the right to have an attorney present before stating whether you will submit to a test," that she was obliged to state whether or not she would submit to a test. *Cahall* v. *Department of Motor Vehicles*, 16 Cal.App.3d 491, 496-497 [94 Cal.Rptr. 182], is analogous to this case. There, the driver in response to a request for a choice of test said, "I'm not even going to give you an answer." The court held the statement amounted to a failure to submit to a chemical test. In our view Miss Lampman's silence infers the same meaning as the driver's statement in *Cahall*. (See also, *Johnson* v. *Dennis* (1971) 187 Neb. 95 [187 N.W.2d 605].)

■ ■ Respondent maintains she was confused by Officer Patterson's advice that she had the right to remain silent. In determining whether a

driver's failure to submit to a test is the result of confusion, the critical factor is not the driver's state of mind, but the fair meaning to be given her response to the request that she submit to a chemical test. (*Maxsted* v. *Department of Motor Vehicles,* 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579].) Miss Lampman's asserted confusion was not evident from her responses to Officer Patterson. Miss Lampman did not tell him that she refused to answer because she thought she had the right to remain silent. In fact, she continued to talk with Officer Patterson, complaining of an eye infection and asking to see her lawyer. At the hearing she testified she had not believed Officer Patterson when he told her she did not have a right to consult a lawyer before taking one of the three tests. Under such circumstances we do not believe an additional recapitulation of her rights and duties by the arresting officer was necessary or that it would have served any useful purpose. (*Wethern* v. *Orr,* 271 Cal.App.2d 813, 815 [76 Cal. Rptr. 807]; *Beales* v. *Dept. of Motor Vehicles,* 271 Cal.App.2d 594 [76 Cal.Rptr. 662].)

■ Respondent suggests that Officer Patterson should have attempted to administer one of the tests, to find out whether her silence meant refusal in fact. Which test the officer should have sought to administer, and how far he should have gone in the course of his attempt, respondent leaves shrouded in the mists of vagueness. We discern no substance to this phantom suggestion. Section 13353 is designed to provide an alternative in the routine case of suspected drunken driving to the use of force to obtain a chemical test of the driver's condition and thereby substitute volition for compulsion. (*People* v. *Fite,* 267 Cal.App.2d 685 [73 Cal. Rptr. 666].) Respondent in effect suggests we require the arresting officer to resort to some degree of compulsion in attempting to administer a test to a noncooperating driver in order to make certain that the latter does not intend to submit to a test. We think this suggestion a step backward, for it is an open invitation to employ some degree of force in the administration of the test. Such a development, with concomitant problem of the precise degree of compulsion that should be employed, would work at cross-purposes with the basic objective of the statute, whose obvious aim is to eliminate the need for compulsion in the processing of routine cases of suspected drunken driving. (Cf. *People* v. *Kraft,* 3 Cal.App.3d 890, 898 [84 Cal.Rptr. 280].)

■ Finally, respondent suggests we make mandatory additional communication from the arresting officer to the arrested person in order to guarantee that the latter has unequivocally refused to take a test for intoxication with full appreciation of his rights and duties. We decline

to create further admonitions for the arresting officer to deliver to the arrested person when the latter is asked to submit to a chemical test, for if the field administration of section 13353 is made too complicated and too liturgistic its whole purpose will have been defeated. The arresting officer has a difficult problem in dealing fairly with persons who may not be in full control of their faculties and who to some extent may be acting irrationally. In addition to the general requirement of *Miranda* warnings (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), the arresting officer is required by the strictures of the case to adhere precisely to specified ritual in each phase of the proceeding for the administration of a chemical test. (*Decker* v. *Department of Motor Vehicles,* 6 Cal.3d 903 [101 Cal.Rptr. 387, 495 P.2d 1307], (officer must advise driver that license "would" rather than "could" be suspended for refusal to take test [see also, *Giomi* v. *Department of Motor Vehicles,* 15 Cal.App.3d 905 (93 Cal.Rptr. 613); *Janusch* v. *Department of Motor Vehicles,* 276 Cal.App.2d 193 (80 Cal.Rptr. 726)]); *James* v. *Dept. of Motor Vehicles,* 267 Cal.App.2d 750 [73 Cal.Rptr. 452], (officer must offer one of three chemical tests if driver expresses willingness to take all the tests); *Rust* v. *Department of Motor Vehicles,* 267 Cal.App.2d 545 [73 Cal.Rptr. 366], (officer must advise driver that the constitutional right to an attorney does not apply to the taking of a chemical test [see also *West* v. *Department of Motor Vehicles,* 275 Cal.App.2d 908 (80 Cal.Rptr. 385); *Farrington* v. *Dept. of Motor Vehicles,* 272 Cal.App.2d 330 (77 Cal.Rptr. 388); *Wethern* v. *Orr,* 271 Cal.App.2d 813 (76 Cal.Rptr. 807); and *Kingston* v. *Dept. of Motor Vehicles,* 271 Cal.App.2d 549 (76 Cal.Rptr. 614)]).) Respondent would have us add yet another warning—that the constitutional right to be silent for purposes of self-incrimination does not include the right to be silent for purposes of driver licensing when a chemical test is sought by an arresting officer. We think no useful purpose would be served by adding one more admonition to those presently required to make effective the operation of section 13353, and we decline respondent's invitation to do so.

2. At the suspension hearing before the Department of Motor Vehicles respondent complained of the latter's refusal to issue her attorney three blank subpoenas and three blank subpoenas duces tecum in advance of the hearing. If the department erred in refusing to issue blank subpoenas in advance of its hearing, its error was not prejudicial. The key issue was whether Miss Lampman's conduct following her arrest amounted to a failure to submit to a chemical test under section 13353. The testimony

of the witnesses for which she sought subpoenas in advance of the hearing would have been irrelevant to that issue. (Cal. Const., art. VI, § 13.)

The judgment is reversed, and the superior court is directed to deny the petition for writ of mandate.

Roth, P. J., and Compton, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 17, 1973.