**Robert D. HOLMAN, Plaintiff and Appellant,**

v.

**S. Tony COX, Director, Driver License Division, Department of Public Safety for the State of Utah, Defendant and Respondent.**

No. 15883.

Supreme Court of Utah.

July 26, 1979.

Loni F. DeLand of McRae & DeLand, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

STEWART, Justice:

Appellant was arrested for driving under the influence of alcohol, and his driver's license was revoked for his refusal to submit to a chemical test pursuant to the Utah Implied Consent Law, § 41–6–44.10 U.C.A.[1] This appeal is from the district court's affirmance of the revocation determination made by the State Department of Public Safety.

Appellant contends that, having been read his *Miranda*[2] rights and at nearly the same time having been asked to take a chemical test without advice of counsel, he was not clear as to his legal rights under the circumstances. His refusal to take the test is not disputed, but he maintains that his confusion as to his rights in effect amounted to reasonable grounds for refusing administration of the test, at least

---

1. U.C.A. refers to Utah Code Annotated, 1953, as amended.

2. The U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), stated that before being interrogated a person must be informed that he has the right to remain silent; that any statements made may be used against him; that he has the right to have an attorney present during interrogation; and that an attorney will be appointed for him if he desires one and is unable to pay an attorney's fee.

until he could consult an attorney, and that therefore his license should not be suspended. He also seeks reversal of the trial court's order on the basis that it was not supported by the evidence.

Appellant's arrest followed his involvement in a minor traffic accident. The highway patrol officer making the arrest gave appellant the *Miranda* warning and shortly thereafter asked him to submit to a chemical test. The officer read him the implied consent law and advised him of the consequences of a refusal to take the test. Appellant nevertheless refused. Appellant testified at trial that he had refused to take the test because he first wanted to confer with an attorney for advice. The officer testified at trial that appellant refused to take the test. The officer also testified that appellant had not asked that he be allowed to contact an attorney. The trial court denied appellant's petition to set aside the license revocation because of the express refusal to take the chemical test. The trial court made no findings, however, regarding appellant's claim that he did not fully understand his legal rights.

 Utah statutory law is clear on the point that there is no right to consult an attorney before deciding whether to take a test.[3] A motorist is deemed by law to have given his prior consent to take a blood test.[4] This Court has made clear that license revocation proceedings, as such, are civil in nature and that constitutional rights afforded defendants in a criminal proceeding do not extend to those proceedings, *Cavaness v. Cox,* Utah, 598 P.2d 349 (1979). However, when a driver suspected of driving under the influence is arrested, he is at that point involved in a criminal proceeding and must be given the *Miranda* warning if his subsequent statements are to be admitted in a criminal proceeding against him. Almost

contemporaneous with the giving of the *Miranda* warning a request to take a test pursuant to the Implied Consent Statute may be made and the driver informed that he has no right to consult an attorney prior to taking the test. These two propositions are not inconsistent with each other; but it is important that each proposition be stated fully, clearly and understandably so that the driver understands that his affirmative duty to take a blood test is not obviated by the *Miranda* warning.

 Obviously the arresting officer cannot know the subjective state of mind of the person arrested and whether he in fact intended his response to a request to take a blood test to be the equivalent of a refusal that would result in license revocation. The test must be objective; otherwise the whole statutory scheme could be subverted by one who equivocates or remains silent, and later protests that it was his unexpressed intent to take the test. However, the behavior of the driver must clearly indicate, judged objectively, that the driver intended to refuse to take the test. See *Beck v. Cox,* Utah, 597 P.2d 1335 (1979), and *Strand v. State Department of Motor Vehicles,* 8 Wash. App. 877, 509 P.2d 999 (1973). When an officer is confronted by a hostile driver, it is important that the personal animosities that may arise not be used as the basis for a conclusion by the officer that the driver refused. Rather, the actual behavior of the driver, as would be judged by a disinterested bystander, should be the basis for such a conclusion.

 When the driver manifests to the officer that he does not understand his duty under the implied consent law in light of the *Miranda* warning, the officer has a responsibility to clarify the driver's rights and responsibilities. If a driver's response indi-

---

3. Section 41–6–44.10(g), U.C.A. states:

 For the purpose of determining whether to submit to a chemical test or tests, the person to be tested shall not have the right to consult an attorney nor shall such a person be permitted to have an attorney, physician or other person present as a condition for the taking of any test.

4. Section 41–6–44.10(a), U.C.A.

cates that he is refusing or postponing the chemical test under the mistaken impression that he is merely asserting a legal right which he thinks he may have under *Miranda*, it is incumbent on the arresting officer to explain unequivocally to the motorist that the rights explained in a *Miranda* warning to remain silent and to consult an attorney do not apply to the decision to take a chemical test.

While an arrested driver has the right to refuse to give statements to a police officer, *Miranda v. Arizona, supra*, he does not have the right to refuse to take a blood test. Cf. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The motorist must choose between permitting the administration of a blood alcohol test and refusing the test and running the risk that he will lose his driver's license for a period of time. The officer is responsible for making this clear to the arrested motorist, and this duty must be discharged in a fashion that will clearly alert the driver to the consequences of a refusal whether expressed verbally or implied from his conduct and words.

A number of states have found it improper to revoke a driver's license on the basis of a refusal to submit to chemical alcohol test because of a misunderstanding based on a failure to make the rights and obligations of the driver clear. See, e. g., *State v. Severino*, Hawaii, 537 P.2d 1187 (1975); *State Dept. of Highways v. Beckey*, 291 Minn. 483, 192 N.W.2d 441 (1971); *Lampman v. Department of Motor Vehicles*, 28 Cal.App.3d 922, 105 Cal.Rptr. 101 (1972); *Wiseman v. Sullivan*, 190 Neb. 724, 211 N.W.2d 906 (1973). Where, however, an officer explicitly states to a motorist that the *Miranda* rights do not apply to the implied consent procedure and that there is no right to consult with an attorney with regard to the decision to take a test, courts have sustained a license suspension based on a refusal. *Reirdon v. Director, Dept. of Motor Vehicles*, 266 Cal.App.2d 808, 72 Cal.

Rptr. 614 (1968); *Herren v. Motor Vehicle Div. of Dept. of Revenue*, Colo., 565 P.2d 955 (1977). See also *Davis v. Pope*, 128 Ga.App. 791, 197 S.E.2d 861 (1973). We agree with the reasoning of these cases.

The question of whether or not the motorist was confused and manifested his confusion to the arresting officer is for the trier of fact to determine, as is the question of whether the officer sufficiently explained the obligation to be tested pursuant to the implied consent law regardless of *Miranda* rights. The trial court did not make a finding as to the issue raised on this appeal. We therefore find it necessary to remand this case for a determination of that issue. Clearly the police officer's testimony, as recited in the dissent, does not resolve the issue. There was contradictory evidence on the point, and it is not for this Court to resolve that conflict. The issue on remand is thus a narrow one.

Finally, we observe that the effectiveness of the Implied Consent Statute will not be diminished if police officers make clear in an explicit fashion one's rights under *Miranda* and one's duties under the implied consent law. Fairness and due process require that a person threatened with the loss of his driver's license should be afforded an opportunity to make a choice based on a fair explanation of his rights and duties.

Appellant's further contention that a request to speak to an attorney before submitting to a chemical test is not a refusal when no unreasonable delay in administering the test would result or where refusal may be based on "reasonable grounds" is without merit, *Beck v. Cox, supra*. The Implied Consent Statute is clear that there is no right to consult an attorney about the decision to take a chemical test, *Cavaness v. Cox, supra.*

The findings of the trial court, as far as they went, were adequately supported by competent evidence. Clearly, there was

sufficient evidence to support the finding of a refusal to take the test. However, the judgment of revocation must be vacated and the case remanded to the trial court for additional findings with respect to the issue of the clarity with which the appellant was instructed as to his obligations and rights.

WILKINS and HALL, JJ., concur.

CROCKETT, Chief Justice: (Concurring As To Statements Of Law, But Dissenting As To Their Application To The Facts)

The question as to any confusion on the part of this plaintiff is injected into this case by the plaintiff himself; and by those who essay to defend his contention. The findings of the trial court are so admirably clear and so commendably succinct that they should be susceptible of no confusion or misunderstanding. They recite very simply and plainly that:

1. The testimony shows that the officer had grounds to arrest the petitioner.

2. That *the petitioner was properly requested to take a chemical test* pursuant to Utah Code Annotated, 41–6–44.10 (1953) as amended.

3. That *the petitioner did refuse to submit to the test* . . . .

A reading of the record reveals with equal clarity that there is clear and unequivocal evidence to support the trial court's findings and conclusions. I quote the following testimony of Officer James Smith:

### REFUSAL TO TAKE TEST

A *My second question was if Mr. Holman would submit to a chemical test.*

Q *What did he say there?*

A *His response was, and I quote, "I refuse."*

Q And did you go on to explain to him the Implied Consent Statute?

A Yes, I did.

Q How did you do that?

A On the alcohol influence report form . . . it has the complete Implied Consent Law on the reverse page. I read this completely to him. Also, I read this completely to him prior to asking him if he would submit to a test.

Q *And after these two readings, what was his response?*

A *He refused.*

\* \* \* \* \* \*

Q (By Mr. Hale) After reading that, did you request that he take a chemical test?

A Yes, I did.

Q What did you say in order to make that request?

A I said, *"Mr. Holman, what is your response to my request that you submit to a chemical test?"*

Q *What was his response?*

A *"I refuse."*

Q *And then how did you respond to his refusal? What did you say?*

A *I explained in my own words what possibly could happen if he refused.*

\* \* \* \* \* \*

A I explained to Mr. Holman . . that Implied Consent Law meant that when he obtained his Utah Driver's License and he drove on . . . public roads in the State of Utah, if he was at any time requested to submit to a chemical test with probable cause from a police officer, that he should submit to that test. If he refused that test without reasonable grounds, that I would report . . . to . . . the Driver's License Division . . . . A hearing would be set. . . . And if the hearing officer felt that he was given the right to take that test but yet he refused . . . his driver's license could be revoked for one year.

\* \* \* \* \* \*

Q *After this conversation did you transport him to the jail?*

A *Yes, I did.*

\* \* \* \* \* \*

Q *Upon arrival at the jail, did you ask him again to submit to a test?*

A Yes, I did.

Q Which test did you request?

A The breath test.

Q *What was his response to your request?*

A *He wouldn't take it. I can't remember his exact response at that time.*

Q *Did you again warn him of the consequences of his refusal?*

A *Yes, I did.* [All emphasis herein added.]

In regard to the question of plaintiff having an attorney at that time: the main opinion correctly states that he has no such right. Moreover, it should be stated that, in any event, the evidence is that he made no such request. It is neither necessary nor desirable to extend this dissent by setting forth in detail the plaintiff's testimony. The best that can be said for his version of what was done, and for his claim of confusion, is that in some particulars it created a conflict with the testimony of Officer Smith. It is both the duty and the prerogative of the trial judge to determine the competency of witnesses and to judge their credibility. If that prerogative is respected, there is no basis whatsoever for concluding that the plaintiff was confused, either about the request to take the blood test, or about his refusal to do so. Inasmuch as the trial court's findings as to the refusal are based on competent and credible evidence, this Court should not disturb them.[1]

In my view, both the findings and judgment rest upon a firm foundation of the law and the evidence, and they should be affirmed.

MAUGHAN, Justice: (concurring and dissenting).

With the result, and with that part of the opinion which is necessary to achieve the result, I concur. From the rationale which remains, I dissent, and cite the reader to my dissent in *Beck v. Cox*, Utah, 597 P.2d 1335 (1979).

---

1. *Gassman v. Dorius*, Utah, 543 P.2d 197 (1975).