Robert CONRAD, Plaintiff and Appellant,

v.

Fred SCHWENDIMAN, Director, Driver's License Division of the State of Utah, Defendant and Respondent.

No. 18661.

Supreme Court of Utah.

April 3, 1984.

Randall Gaither, Salt Lake City, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Bruce Hale, Mark K. Buchi, Salt Lake City, for defendant and respondent.

HALL, Chief Justice.

The Utah Department of Public Safety revoked plaintiff Robert Conrad's driver's license because of his failure to submit to a breathalyzer test pursuant to Utah's implied consent statute, U.C.A., 1953, § 41–6–44.10. The district court upheld that decision; plaintiff appeals. We affirm.

Plaintiff was stopped by a Salt Lake City police officer because plaintiff was driving his vehicle the wrong way on a one-way street. After detecting a strong odor of alcohol emanating from the plaintiff, the officer asked him to perform field sobriety tests; plaintiff complied. Because of plaintiff's poor performance on the field tests, the officer concluded that the plaintiff was intoxicated and arrested him for driving under the influence. The officer then requested the plaintiff to take a breathalyzer test and informed him of the consequences of refusal under the implied consent law. Plaintiff replied that he would take a blood test. The officer told plaintiff that Salt Lake City offered blood tests only in cases

of serious injury or fatal traffic accidents and again requested plaintiff to submit to a breathalyzer test. Plaintiff expressed concern about his car instead of responding to the request. The officer twice more asked plaintiff to submit to a breathalyzer test. Plaintiff did not expressly refuse the test, but also did not agree to take it. Finally, a second officer transported plaintiff to jail. After the second officer had left the jail, plaintiff requested the breathalyzer test. The test was never given.

After a hearing before an examiner for the Department of Public Safety, plaintiff's driver's license was suspended because plaintiff refused to submit to a breathalyzer test pursuant to § 41–6–44.10. At a trial de novo, the district court found that the plaintiff had refused to submit to the breathalyzer test and ordered his license revoked for one year. Plaintiff appeals that decision, contending that he should have been informed by the arresting officer of his right to have a subsequent blood test performed by his own physician.[1] Plaintiff also contends that his belated consent to take the test could have cured the earlier refusal and that the trial court erred in refusing to allow plaintiff to question the testifying officer as to whether either officer could have returned to the jail to administer the test.

■ Plaintiff's failure to agree to take the breathalyzer test after having been asked at least four times to do so is undeniably a refusal to take the test. It is not necessary that the refusal be in unequivocal terms. It is sufficient if the behavior of the driver indicates his intention to refuse.[2] The behavior of the plaintiff in this case clearly indicates he intended to refuse to take the test and played verbal games with the officer to avoid direct refusal.

■ As this Court pointed out in *Beck v. Cox*,[3] an officer is not required to continue to ask a driver to take the test when the driver refuses to give a simple "yes" or "no" answer to a clearly stated request:

How many times should an officer ask a driver, who refuses to give an unequivocal answer, to take the test? Should he be required to persist and continue to repeat the request until such time as the driver believes that he has achieved a degree of sobriety sufficient to pass the test and is safe in giving a straight answer? The consequence of such a construction is to place a premium on uncooperativeness and obstruction.... Certainly the Legislature did not intend that law enforcement officers be placed in such an impossible situation or that the purpose of the law should be so easily evaded.[4]

There is no merit to plaintiff's contention that his belated request to take the breathalyzer test cured his earlier refusal. Section 41–6–44.10(b) clearly states:

Following this warning, unless such person *immediately* requests the chemical test or tests as offered by a peace officer be administered, no test shall be given and a peace officer shall submit a sworn report that he had grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol ... and that the person had refused to submit to a chemical test or tests as set forth in subsection (a) of this section. [Emphasis added.]

■ This language evidences legislative intent that drivers should not be allowed to equivocate, but must agree to submit to the test immediately following a warning of the consequences of the refusal to take the test. Otherwise, refusal is conclusively presumed. Whether either officer could have returned to the jail to administer the test is irrelevant.

Plaintiff, however, claims that even if he did refuse to take the breathalyzer test his driving privileges should be reinstated be-

---

**1.** Pursuant to U.C.A., 1953, § 41–6–44.10(f).

**2.** *Holman v. Cox,* Utah, 598 P.2d 1331 (1979); *Beck v. Cox,* Utah, 597 P.2d 1335 (1979).

**3.** *Id.*

**4.** *Id.* at 1337.

cause the arresting officer did not inform plaintiff that he was entitled to a blood test performed by his own physician subsequent to performance of the breathalyzer test.

Plaintiff relies heavily on *People v. Gillett*[5] to support his contention. *Gillett* holds that when an arresting officer invokes the sanctions of the implied consent law by requesting the driver to submit to a chemical test the officer has a duty to comply with the driver's request for a blood test. *Gillett* is inapposite. Colorado's implied consent law provides that a person arrested for DUI, after being requested to take a chemical test, may request a blood test and that test must be given.[6]

Utah's implied consent law, § 41–6–44.-10(a), however, says:

> No person, who has been requested pursuant to this section to submit to a chemical test or tests of his breath, blood, or urine, shall have the right to select the test or tests to be administered. The failure or inability of a peace officer to arrange for any specific test shall not be a defense to taking a test requested by a peace officer nor be a defense in any criminal, civil or administrative proceeding resulting from a person's refusal to submit to the requested test or tests.

■ Plaintiff thus had no right to demand a blood test rather than a breathalyzer test. Further, the refusal of the arresting officer to arrange a blood test is no defense to plaintiff's refusal to take the breathalyzer test.

■ Finally, plaintiff's interpretation of the implied consent statute would effective-ly destroy the intent of the statute and is without foundation in authority or logic. If his argument was accepted, any driver arrested for DUI could refuse to take the requested test but avoid having his license revoked simply because the arresting officer did not, by rote, inform the driver he could have his own physician perform a blood test after the requested breathalyzer test was completed. The legislative intent is apparent; the implied consent statute must be construed so as to make its application practicable and to enable an officer to deal realistically with drivers who may be uncooperative or hostile.[7]

■ Section 41–6–44.10(b) is clear. If the driver refuses to take the test requested by the officer, his driver's license must be revoked. Subsection (f)[8] does not supersede or negate subsection (b), but merely provides the defendant with additional means—a blood test—to muster a defense to a charge of driving under the influence. This language places no duty on the arresting officer to affirmatively inform an arrested driver who has refused a breathalyzer test that he can have a subsequent blood test performed by his own physician.

The judgment of the district court is affirmed.

STEWART and OAKS, JJ., concur.

HOWE, Justice (dissenting).

I dissent.

U.C.A., 1953, § 41–6–44.10(f), which is set out in full in footnote 8 of the majority opinion, extends to the arrested driver the right to have a physician of his own choice administer a chemical test in addition to the

---

5. Colo., 629 P.2d 613 (1981).

6. Colorado's implied consent law, § 42–4–1202(3), C.R.S.1973, provides: "If such person requests that the said chemical test be a blood test, then the test shall be of his blood...."

7. *Beck, supra* n. 2, at 1337.

8. Pursuant to U.C.A., 1953, § 41–6–44.10(f):

   The person to be tested may, at his own expense, have a physician of his own choosing administer a chemical test in addition to the test or tests administered at the direction of a peace officer. *The failure or inability to obtain such additional test shall not affect admissibility of the result of the test* or tests taken at the direction of a peace officer, nor preclude nor delay the test or tests to be taken at the direction of a peace officer. Such additional test shall be subsequent to the test or tests administered at the direction of a peace officer.

   (Emphasis added.)

test administered at the direction of the arresting peace officer. I agree with the statement in the majority opinion that "this language places no duty on the arresting officer to affirmatively inform an arrested driver who has refused a breathalyzer test that he can have a subsequent blood test performed by his own physician."

That statement, however, does not address the question presented here. The arresting officer testified that the plaintiff twice offered to submit to a blood test but the officer replied, "I can't offer that to you." He explained that blood tests could be given only where there had been an accident and serious bodily injury or a fatality had resulted. The plaintiff told the officer that he thought blood tests were more accurate than breath tests. Thus it is clear that the plaintiff brought up the subject of a blood test and twice requested one. Since the plaintiff clearly had the right to a blood test, the answer of the officer was a misleading half-truth. The officer had the plaintiff handcuffed and in custody and should have informed him when he offered to submit to a blood test that he could obtain one after the breathalyzer test was given him. Instead, plaintiff was given a categorical "no" which was not a complete and fully truthful answer to his request.

The plaintiff obviously had confidence in blood testing. Had the officer not misinformed him, he might well have been willing to submit to a prior breathalyzer test since he would have had a check on its reliability. In *Holman v. Cox*, Utah, 598 P.2d 1331 (1979), the appellant's driver's license was revoked for his refusal to submit to a chemical test. He contended that because he had been arrested, had had his *Miranda* rights read and at the same time had been asked to take the chemical test, he was not clear as to his legal rights under the circumstances. We stated:

> When the driver manifests to the officer that he does not understand his duty under the implied consent law in light of the *Miranda* warning, the officer has a responsibility to clarify the driver's rights and responsibilities. If a driver's response indicates that he is refusing or

postponing the chemical test under the mistaken impression that he is merely asserting a legal right which he thinks he may have under *Miranda*, it is incumbent on the arresting officer to explain *unequivocally* to the motorist that the rights explained in a *Miranda* warning to remain silent and to consult an attorney do not apply to the decision to take a chemical test.

*Id.* at 1333–34 (emphasis added). We reversed the judgment revoking the appellant's driver's license and remanded the case for further findings of fact. We held that "fairness and due process require that a person threatened with the loss of his driver's license should be afforded an opportunity to make a choice based on a fair explanation of his rights and duties."

While the plaintiff here was not relying on his *Miranda* rights, he did make two clear requests that he be allowed a blood test. The arresting officer's responses were not an adequate and fair explanation of his rights. *Holman v. Cox*, supra, unquestionably requires a reversal of the judgment revoking his license.

DURHAM, J., concurs in the dissenting opinion of HOWE, J.