2011 UT App 182

**Pete JOHANSSON, Petitioner,**

v.

**Nanette ROLFE, Bureau Chief, Driver Control Bureau, Driver License Division, Department of Public Safety, State of Utah, Respondent.**

**No. 20110105–CA.**

Court of Appeals of Utah.

June 9, 2011.

Jason A. Schatz, Salt Lake City, for Appellant.

Mark L. Shurtleff and Nancy L. Kemp, Salt Lake City, for Appellee.

Before Judges McHUGH, THORNE, and CHRISTIANSEN.

## DECISION

PER CURIAM:

¶ 1 Appellant Pete Johansson appeals the decision of the district court after a trial de novo on an administrative driver license suspension. This case is before the court on the motion of Appellee Nanette Rolfe, Bureau Chief of the Driver Control Bureau, for summary disposition.

¶ 2 "Our review of a trial de novo on a driver license suspension is deferential to the trial court's view of the evidence unless the trial court has misapplied principles of law or its findings are clearly against the weight of the evidence." *Decker v. Rolfe,* 2008 UT App 70, ¶ 9, 180 P.3d 778 (internal quotation marks and citation omitted). "The question of whether or not a motorist was confused and manifested his confusion to the arresting officer is for the trier of fact to determine, as is the question of whether the officer sufficiently explained the obligation to be tested pursuant to the implied consent law." *Holman v. Cox,* 598 P.2d 1331, 1334 (Utah 1979); *see also Pledger v. Cox,* 626 P.2d 415, 417 (Utah 1981) (concluding that the trial de novo on an driver license revocation is a complete retrial). The Utah Supreme Court adopted an objective test in *Holman v. Cox,* 598 P.2d 1331, 1333 (Utah 1979), stating,

> Obviously the arresting officer cannot know the subjective state of mind of the person arrested and whether he in fact intended his response to a request to take a blood test to be the equivalent of a refusal that would result in license revocation. The test must be objective; otherwise the whole statutory scheme could be subverted by one who equivocates or remains silent, and later protests that it was his unexpressed intent to take the test. However, the behavior of the driver must clearly indicate, judged objectively, that the driver intended to refuse to take the test.

*Id.* at 1333. Johansson stipulated for purposes of the trial de novo "that the only issue to be heard [was] whether or not he refused

to take the requested chemical test after being given a fair explanation of Utah's implied consent law," *see* Utah Code Ann. § 41–6a–520 (Supp.2010).

██ ¶ 3 Officer Wind testified that he explained that the intoxilyzer machine would be brought to the scene of the arrest and that it was calibrated. Johansson initially agreed to take the requested breath test. Officer Wind also testified, "Then close to a minute later, he asked me, 'Does the machine come here?'" I said, "'Yes, it does. It's transported by another officer here.'" Johansson then "refused the test." Johansson denied that he was told of the consequences of refusing a breath test. In contrast, Officer Wind testified that he read the refusal admonition verbatim off of the DUI Report Form. Officer Wind also testified that another officer drove the intoxilyzer machine to the scene of the arrest, removed the machine from his car, and placed it on the trunk. Because Johansson had refused to take the breath test, Officer Wind told the other officer that the machine would not be needed. Johansson testified that he refused to test because he did not believe that a machine driven around in a patrol car would be reliable. He denied that he had seen the intoxilyzer machine brought to the scene. However, he agreed that he said, "The machine comes here? Then, I refuse." Officer Wind did not again ask Johansson to take a breath test at the police precinct, and he denied that Johansson asked to do a breath test after they arrived at the station. Johansson testified that he would have consented to a breath test if he had known there was an intoxilyzer machine at the police precinct. Giving appropriate deference to the district court's view of the evidence, the district court's findings that Johansson was adequately and clearly advised of the consequences of refusing a breath test and that he refused to take a breath test are not clearly erroneous.

¶ 4 Johansson urged the district court to adopt the reasoning of case law from Kansas allowing a driver to rescind his refusal to take a chemical test. *See Standish v. Department of Revenue,* 235 Kan. 900, 683 P.2d 1276, 1281 (1984). However, even the application of that Kansas case would have re-quired the district court to first find that Johansson had attempted to rescind his refusal to take the breath test. The district court did not make such a finding, accepting the testimony of the arresting officer that Johansson did not ask to take a breath test after his refusal. Moreover, the district court concluded that under Utah law, "[a] clear refusal then a subsequent change of mind is still a refusal." *See Whitehouse v. Schwendiman,* 723 P.2d 1084, 1085 (Utah 1986) (per curiam) (stating a request to test after several refusals and after the intoxilyzer was shut down was not an "immediate request" to test); *Baker v. Schwendiman,* 714 P.2d 675, 677 (Utah 1986) (stating a request for a test fifteen to twenty minutes after refusal and after the intoxilyzer had been shut down did not rescind a refusal); *see also* Utah Code Ann. § 41–6a–520(2)(b)(i) (Supp.2010) (stating that if a person receiving the warning regarding refusal to test "does not immediately request that the chemical test or tests as offered by a peace officer be administered," the officer shall give notice of the intention to revoke the person's license). Furthermore, Utah Code section 41–6a–520(1)(d)(i) states, "A person who has been requested under this section to submit to a chemical test or tests of the person's breath, blood, or urine, or oral fluids may not select the test or tests to be administered." *Id.* § 41–6a–520(1)(d)(i); *see also id.* § 41–6a–520(1)(d)(ii) (stating that "the failure or inability of a police officer to arrange for any specific chemical test is not a defense to taking a test requested by a police officer" in either the administrative proceeding or a trial de novo).

¶ 5 The district court's factual findings are supported by sufficient evidence, are not clearly erroneous, and do not misapply Utah law. Accordingly, we affirm the district court's decision.