2020 UT App 32

# THE UTAH COURT OF APPEALS

DAVID D. GUKEISEN,
Appellant,
*v.*
DEPARTMENT OF PUBLIC SAFETY,
DRIVER LICENSE DIVISION,
Appellee.

Opinion
No. 20190040-CA
Filed March 5, 2020

Third District Court, Salt Lake Department
The Honorable Patrick W. Corum
No. 180903729

Stephen D. Spencer, Attorney for Appellant

Sean D. Reyes, Brent A. Burnett, and Rebecca D.
Waldron, Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER
and DIANA HAGEN concurred.

HARRIS, Judge:

¶1　David D. Gukeisen was pulled over one night on suspicion of drunk driving. When an officer asked whether Gukeisen would consent to a breath test, Gukeisen refused to give a direct answer, instead stating that he wanted his lawyer present. Later, both the Driver License Division and the district court determined that Gukeisen's response constituted, at best, a conditional consent to submit to a breath test. Based on his failure to unconditionally submit to a breath test, Gukeisen's driver license was revoked for eighteen months. Gukeisen now appeals the revocation of his license, arguing that the district

court erred by determining that he gave only conditional consent to the breath test. We affirm.

## BACKGROUND

¶2      Early one morning, just before 3:00 a.m., a Utah Highway Patrol (UHP) trooper (Trooper) stopped a Ford F-150 that had been swerving erratically. The truck was occupied by Gukeisen—who was driving—and another passenger. When Trooper approached the truck's window, he immediately smelled alcohol and noticed that Gukeisen was slurring his speech. At Trooper's request, Gukeisen stepped out of the vehicle, and Trooper noticed that Gukeisen had a "circular sway while standing," and that the odor of alcohol was coming from his mouth. Trooper administered one field sobriety test—for horizontal gaze nystagmus, a test on which Gukeisen exhibited six out of six clues that he might be impaired—but Gukeisen refused to perform any other field sobriety tests at that time, stating that he wanted his lawyer to be present before any other tests were performed.

¶3      At that point, Trooper informed Gukeisen that he was under arrest for driving under the influence, and placed Gukeisen in the back of his patrol car. Once in the patrol car, Trooper asked Gukeisen to submit to a breath test, which would be administered in a few minutes at the nearby UHP substation where the breathalyzer machine was located. Gukeisen responded by stating as follows: "I would like to have my lawyer present, to make sure these tests are done in accordance with the law." Trooper understood Gukeisen's response to be a refusal, and therefore read to Gukeisen the "refusal admonition" given in such situations:

> Your right to remain silent and your right to counsel do not apply to the implied consent law which is civil in nature and separate from the criminal charges. Your right to remain silent does

not give you the right to refuse to take the test. You do not have the right to have counsel during the test procedure. Unless you submit to the test I'm requesting, I will consider that you have refused to take the test. I warn you that if you refuse to take the test your driving privilege can be revoked with no provision for limited driving.

If you refuse to test or fail to follow my instructions, I must warn you that your driving privilege may be revoked for 18 months if age 21 or older, or for two years, or until age 21 if you are under the age of 21; or 36 months, or until age 21 if it is a second or subsequent license withdrawal for an alcohol or drug related driving offense, with no provision for limited driving. In addition, you will be prohibited from driving with any measurable or detectable amount of alcohol in your body for a period of five or ten years, depending on your prior driving history, and you will be prohibited from driving a vehicle without an ignition interlock device installed for a period of three years. I will make the test results available to you, if you take the test.

¶4    In response, Gukeisen again equivocated, stating that he was "not refusing anything," but just requesting that his lawyer "be present, to make sure these tests are done within the provisions of the law." Given Gukeisen's repeated requests that his lawyer be present for any tests, Trooper understood Gukeisen's responses to be a refusal to submit to the breath test or, at best, a conditional consent to test only if his lawyer were on scene.

¶5    Trooper then applied for a search warrant that would authorize him to take Gukeisen's blood without his consent, and proceeded to transport Gukeisen to the UHP substation. Upon

their arrival, Gukeisen was not placed in the room with the breathalyzer machine, presented with a mouthpiece to blow into, or asked to take a breath test again, because by this time, Trooper had received a warrant to take Gukeisen's blood. Trooper presented the warrant to Gukeisen, and informed him that they were going to draw his blood. Gukeisen was fully compliant with the blood draw.

¶6     In a subsequent administrative proceeding, the Driver License Division revoked Gukeisen's driving privilege for eighteen months, concluding that he had refused to submit to a breath test. Gukeisen petitioned the district court for review of the administrative determination to revoke his driver license. The district court held an evidentiary hearing on the matter, at which Trooper appeared and testified under oath. At the conclusion of the hearing, the court found that, while Gukeisen "never expressly refused to take the chemical test," his "agreement to take the test was conditional upon having his attorney present," and therefore his "behavior was a volitional failure to agree to take the requested chemical test, and as such his response constituted a refusal." The court then entered an order denying Gukeisen's petition, and affirming the eighteen-month revocation of his driver license.

ISSUE AND STANDARD OF REVIEW

¶7     Gukeisen appeals from the district court's order, and asserts that the court erred by finding that Gukeisen refused to submit to a breath test. In this context, we review the district court's factual findings for clear error, but we review its ultimate legal conclusions for correctness. *See State v. Mitchell*, 2019 UT App 190, ¶ 10, 455 P.3d 103. "The determination that plaintiff's failure to respond to the officer or to take the test amounts to a refusal is a factual finding which we will not disturb when supported by substantial evidence." *Lee v. Schwendiman*, 722 P.2d 766, 767 (Utah 1986) (per curiam).

ANALYSIS

¶8    As a matter of Utah statutory law, every person who chooses to drive a vehicle on Utah's roadways is deemed to have given implied consent, for driver license purposes,[1] to a chemical test of their "breath, blood, urine, or oral fluids" for the purpose of determining their impairment level. *See* Utah Code Ann. § 41-6a-520(1)(a) (LexisNexis Supp. 2019);[2] *see also Beck v. Cox*, 597 P.2d 1335, 1337–38 (Utah 1979) (observing that Utah statutory law "provides that a driver is deemed to have given his consent" to a chemical "test as a condition to using the highways" (quotation simplified)). The implied consent statute requires that an officer who requests a chemical test "shall warn a person that refusal to submit to the test . . . may result in revocation of the person's license to operate a motor vehicle." Utah Code Ann. § 41-6a-520(2)(a). The statute also makes plain that, in this context, "the person to be tested does not have the right to consult an attorney or have an attorney . . . present as a condition for the taking of any test." *Id.* § 41-6a-520(5); *see also Holman v.*

---

1. It bears noting that, in this case, we are concerned only with the status of Gukeisen's driver license, and not with the status of his liberty. If this were a case in which the State had charged Gukeisen with violations of criminal law, and was thereby attempting to deprive Gukeisen of his liberty, we would need to concern ourselves with additional constitutional questions, including search and seizure issues. But there is no constitutional right to a driver license, *see, e.g.*, *Holman v. Cox*, 598 P.2d 1331, 1333 (Utah 1979) (stating that "license revocation proceedings are civil in nature" and that "constitutional rights afforded defendants in a criminal proceeding do not extend to those proceedings"), and Gukeisen mounts no constitutional challenge to the implied consent statute in this case.

2. Because the relevant sections of the statute have not changed since the date of the incident in question, we cite the current version of the Utah Code for convenience.

*Cox*, 598 P.2d 1331, 1333 (Utah 1979) ("[T]here is no right to consult an attorney before deciding whether to take a test.").

¶9     Our supreme court has made clear that a motorist can "refuse" a chemical test in any number of ways, and that a motorist may be considered to have refused the test even without actually saying "no" or "I refuse." *See Beck*, 597 P.2d at 1337–38. In *Beck*, the court rejected the argument that a refusal must be "express" or "unequivocal," noting that, if the opposite were true, "any person driving under the influence of alcohol could avoid having his license revoked by temporizing, equivocating, or simply remaining silent." *Id.* at 1337. Indeed, the court stated as follows:

> The implied consent statute should be construed in a fashion to make its application practicable and to enable an officer to deal realistically with arrested drivers who may be uncooperative, and even hostile. An officer would be confronted with an extremely difficult, if not impossible, problem if the statute were construed to require an express verbal refusal and an arrested driver simply equivocated or remained silent when requested to take a test. How many times should an officer ask a driver, who refuses to give an unequivocal answer, to take the test? Should he be required to persist and continue to repeat the request until such time as the driver believes that he has achieved a degree of sobriety sufficient to pass the test and is safe in giving a straight answer? The consequence of such a construction is to place a premium on uncooperativeness and obstruction that would likely inflame an already tense situation. Certainly the Legislature did not intend that law enforcement officers be placed in such an impossible situation or that the purpose of the law should be so easily evaded.

*Id.; see also Lee v. Schwendiman*, 722 P.2d 766, 767 (Utah 1986) (per curiam) (stating that "a refusal to submit to testing need not be expressed, but may be implied from the driver's conduct, words, and behavior"); *Conrad v. Schwendiman*, 680 P.2d 736, 738 (Utah 1984) (discerning in the implied consent statute "legislative intent that drivers should not be allowed to equivocate, but must agree to submit to the test immediately following a warning of the consequences of the refusal to take the test," and if they do not, "refusal is conclusively presumed"). Indeed,

> [t]here is no mysterious meaning to the word "refusal." In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, 'I refuse,' or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal does not make any difference.

*Beck*, 597 P.2d at 1338 (quotation simplified). This court has even specifically held that "[a] consent to be tested cannot be conditioned upon the presence of counsel." *Cowan v. Schwendiman*, 769 P.2d 280, 282 (Utah Ct. App. 1989) (per curiam).

¶10 After holding an evidentiary hearing, the district court made a factual finding that Gukeisen's conduct, when viewed in its entirety, constituted a refusal to take the breath test. As noted above, we will uphold this finding unless Gukeisen demonstrates that the finding was clearly erroneous and unsupported by substantial evidence. *See Lee*, 722 P.2d at 767. Gukeisen has not made that showing here.

¶11 When Trooper asked him to submit to a breath test, Gukeisen responded by twice asking that his lawyer be present

before any tests were administered. Just a few minutes earlier, Gukeisen had made a similar statement when asked to submit to additional field sobriety tests, and on that basis had actually refused to comply. Under these circumstances, and after hearing Trooper testify, the district court credited Trooper's testimony that he reasonably believed that Gukeisen's responses constituted a refusal, or at least that any consent Gukeisen was giving was conditioned upon having his lawyer present. Based largely on Trooper's testimony, the court made a factual finding that Gukeisen had refused to submit to a chemical test. And after examining the record on appeal, we have no reason to second-guess the district court's determination.

¶12    Gukeisen, however, points out that he told Trooper he was not "refusing anything," and emphasizes that, after he and Trooper arrived at the UHP substation where the breathalyzer machine was located, Trooper did not ask again for Gukeisen to take the test, and that Gukeisen was completely compliant with all of Trooper's commands (for instance, regarding the blood draw) at the station. From this evidence, Gukeisen asserts that, when the totality of his conduct is considered, he did not actually refuse the test.

¶13    But at most, Gukeisen has demonstrated that conflicting evidence existed in this case. The district court was well aware of this evidence when it made its final ruling, even specifically noting that Gukeisen "never expressly refused to take the chemical test." In situations where the evidence conflicts, a district court must choose which evidence to credit and which evidence to disregard, and "[w]e defer to the [district] court's advantaged position to weigh that conflicting evidence." *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 18, 305 P.3d 196; *see also Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 60, 288 P.3d 1046 ("The existence of conflicting evidence does not give rise to clear error as long as evidence supports the [district] court's decision." (quotation simplified)); *Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n.5, 217 P.3d 733 ("The pill that is hard for many appellants to swallow is that if there is evidence supporting a

finding, absent a legal problem—a 'fatal flaw'—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings.").

¶14    In this case, substantial evidence supported the district court's finding. When asked to submit to a chemical test, Gukeisen equivocated and asked for his lawyer. Under applicable statutes and caselaw, such conditional consent is considered a refusal to test. *See* Utah Code Ann. § 41-6a-520(5); *see also Cowan*, 769 P.2d at 281. Where substantial evidence supports the district court's finding, we will not disturb it on appeal. *See Lee*, 722 P.2d at 767.

CONCLUSION

¶15    The district court made a supported factual finding that Gukeisen refused to submit to a chemical test. Accordingly, we affirm the court's order revoking Gukeisen's driver license.

———————