[Civ. No. 30065. Fourth Dist., Div. Three. June 8, 1983.]

LUCINDA JANE EILINGER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## Counsel

George Deukmejian, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Appellant.

Stuart M. Parker and Ellen Winterbottom for Plaintiff and Respondent.

## Opinion

**SONENSHINE, J.**—Department of Motor Vehicles (DMV) appeals from a judgment granting a peremptory writ of mandate reversing the suspension of respondent's (Eilinger) driving privilege for failing to submit to a blood, breath, or urine test.

The administrative referee found (1) the officer had probable cause to stop Eilinger for driving under the influence of liquor; (2) she was lawfully arrested; (3) she had been informed her driving privilege would be suspended for refusal to submit to a chemical test; and (4) she did refuse to submit to a chemical test of her blood, breath or urine. DMV ordered Eilinger's license suspended for a period of six months.

The trial court disagreed, finding "that earlier fear of police from her life in Argentina caused her to become almost paralyzed because of this fear" and rendered her unable to respond "to a request to select a chemical test from among the three offered." It further found the officer failed to advise Eilinger of the requirements and consequences of Vehicle Code section 13353 "in a manner in which she could reasonably be expected to respond." The court stated the officer could have ordered a blood test on the grounds Eilinger was unable to elect a proper choice of tests under Vehicle Code section 13353, subdivision (a)(5) or, "in the alternative, he could have readvised her of the admonitions after her responsiveness was again demonstrated at the jail." Since

the officer chose to do neither of the above, the legal requirements for a "refusal" under California law had not been met.

## DISCUSSION

■ We are asked to decide whether a motorist's undisclosed and irrational fear of police stemming from prior experiences rather than immediate police conduct is sufficient to excuse compliance with the implied consent law (Veh. Code, § 13353) under Vehicle Code section 13353, subdivision (a)(5). We hold it is not.

The implied consent statute is designed "to eliminate the carnage on our highways caused by those who drive after drinking excessively." (*Sanchez* v. *Alexis* (1982) 131 Cal.App.3d 709, 714 [182 Cal.Rptr. 593].) The voluntary submission by a driver to a chemical test and its immediate completion is basic to the proper implementation of Vehicle Code section 13353.

Vehicle Code section 13353, subdivision (a)(5) creates an exception to voluntarily submitting to the test if the driver "is unconscious or otherwise in a condition rendering him or her incapable of refusal" and allows the administration of the test "whether or not the person is told that his or her failure to submit to, or the noncompletion of, the test will result in the suspension of his or her privilege to operate a motor vehicle." A driver is excluded from the requirement of voluntary submission if he or she is *incapable of understanding* the requirements and consequences of the test. Implicit in such exclusion is a requirement the driver's refusal is *rational* and *disclosed* under the circumstances of the facts presented. In all other situations, refusal to voluntarily submit to the test, and its completion, automatically results in the loss of the driver's license.

Eilinger contends the following conditions made her fearful: The area of the traffic stop was dark and deserted; she was alone except for the presence of the officers; one officer was an extremely tall, big, unfriendly and surly individual; a friend of hers had been found dead in Chicago; she had lived in Argentina during the revolution "and the police down there are not like the police here." But *at no time did she express her extreme fear* to the police officer; *nor did the officer,* according to the trial court's findings, *do anything to frighten her.*

A *self-induced condition* rendering one incapable of understanding does not excuse failure to take a test. (*Bush* v. *Bright* (1968) 264 Cal.App.2d 788 [71 Cal.Rptr. 123]; *McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653 [119 Cal.Rptr. 804].) Only lack of understanding due to no fault of the driver excuses a refusal. (*Thompson* v. *Department of Motor*

*Vehicles* (1980) 107 Cal.App.3d 354 [165 Cal.Rptr. 626]; *Rees* v. *Department of Motor Vehicles* (1970) 8 Cal.App.3d 746 [87 Cal.Rptr. 456]; *Goodman* v. *Orr* (1971) 19 Cal.App.3d 845 [97 Cal.Rptr. 226].)

Unlike the driver in *McDonnell,* Eilinger had no physical ailments which prevented her from complying with the implied consent law. She never demanded to speak with an attorney before taking the test. The officer did not confuse Eilinger in any way as in *Rees* or *Goodman* regarding the *Miranda* and implied consent requirements. There was no external noise interference, as in *Thompson,* to prevent Eilinger from hearing the admonitions. "The determining factor is not the state of the suspect driver's mind, it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Maxsted* v. *Department of Motor Vehicles* (1971) 14 Cal.App.3d 982, 986 [92 Cal.Rptr. 579].) Eilinger's fear may have been real to her, but she was talkative, volatile and communicative until the admonition. She repeatedly refused to get out of her vehicle to take the requested field sobriety tests. She even informed the officer she believed those tests were ridiculous. In short, Eilinger was communicative prior to being handcuffed and placed in the patrol vehicle. After the recitation of the admonitions and while she was still in the patrol car and handcuffed, Eilinger broke her silence and acknowledged the *Miranda* warnings, refusing to make any statements to the officers. At the jail, she answered all the questions during the booking process.

Eilinger's fear was irrational and undisclosed and could not excuse her from the requirements of the implied consent law. The trial court did not abuse its discretion in its factual findings, but as a matter of law, erred in reversing the administrative order.

■ Additionally, the trial court erred in finding a requirement to rea monish Eilinger. Her silence constituted a failure to submit to a test within t meaning of Vehicle Code section 13353. (*Lampman* v. *Department of Motor Vehicles* (1972) 28 Cal.App.3d 922, 926 [105 Cal.Rptr. 101].) Too great a burden would be placed on officers if they had to determine the psychological state of each suspect driver's mind.

An officer's duty to admonish does not include persisting until the driver is ready to listen. (*Morphew* v. *Department of Motor Vehicles* (1982) 137 Cal.App.3d 738 [188 Cal.Rptr. 126].) ■ Since Eilinger was capable of understanding, the officer had no duty to test without her consent. (*Maxsted* v. *Department of Motor Vehicles, supra,* at p. 987.) Nor would Eilinger fare better if the officer had persisted in taking a test without her consent. The fact a blood sample may ultimately be obtained and the test completed is of no significance *absent the consent* of the defendant. The implied consent law requires consent and completion of the test. (*Cole* v. *Department of Motor Vehicles* (1983) 139 Cal.App.3d 870 [189 Cal.Rptr. 249].)

The judgment of the trial court is reversed with directions to enter judgment denying the petition for writ of mandate.

Trotter, P. J., and Wallin, J., concurred.

A petition for a rehearing was denied June 27, 1983, and respondent's petition for a hearing by the Supreme Court was denied August 17, 1983.