**Elmer A. ROBERTS,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1084A249.**

Court of Appeals of Indiana,
First District.

Feb. 14, 1985.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Elmer A. Roberts appeals the trial court's decision that he refused to submit to a chemical test for intoxication thus upholding the administrative suspension of his driver's license pursuant to the Indiana Implied Consent law.[1]

We affirm.

## FACTS

On February 1, 1984, Roberts was driving a pickup truck in an easterly direction on State Road 58 in Greene County when a westbound automobile crossed into Roberts' lane. Although Roberts swerved to his right, he was unable to avoid being struck by the automobile. Roberts' truck was lying on its side off the roadway when police arrived. The officers noticed a moderate to strong odor of alcohol on Roberts' breath, and after extricating him from his truck, Deputy Sheriff Hassler requested that Roberts submit to a breathalyzer test for intoxication.[2] Roberts refused. Hassler then informed Roberts that his refusal would result in the suspension of his driving privileges.[3] Roberts again refused.

Roberts was arrested and transported to the Greene County jail. Deputy Hassler then submitted a probable cause affidavit

Clarence C. Frank, Andrew C. Mallor Associates, P.C., Bloomington, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Theodore E. Hansen, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

1. Indiana Code section 9–11–4–1 *et seq.* References in this opinion are to the 1983 act which governs this proceeding. Certain amendments were made in 1984 which do not affect this case and would not alter our decision.

2. Indiana Code section 9–11–4–2 provides:
   "A law enforcement officer who has probable cause to believe that a person has committed an offense under this article shall offer the person the opportunity to submit to a chemical test. It is not necessary for the law enforcement officer to offer a chemical test to an unconscious person. A law enforcement officer may offer a person more than one (1) chemical test under this chapter. However, all tests must be administered within three (3) hours after the officer had probable cause to believe the person violated IC 9–11–2. A person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter."

3. Indiana Code section 9–11–4–7 provides:
   "(a) If a person refuses to submit to a chemical test, the arresting officer shall inform the person that his refusal will result in the suspension of his driving privileges.
   (b) If a person refuses to submit to a chemical test after having been advised that the refusal will result in the suspension of his driving privileges or submits to a chemical test that results in prima facie evidence of intoxication, the arresting officer shall forthwith:
   (1) obtain the person's driving license or permit if the person is in possession of the document and issue a receipt valid until the person's driving privileges are suspended by the bureau; and

to the prosecuting attorney who filed it together with an information charging Roberts with driving while intoxicated.[4] Record at 13. The county court found the existence of probable cause and that Roberts had refused to submit to a chemical test when offered.[5] Record at 14.

Pursuant to Indiana Code section 9–11–4–9(a), which provides: "(a) If the affidavit under section 8(b) of this chapter states that a person refused to submit to a chemical test, the bureau shall suspend the driving privileges of the person for one (1) year," the Bureau of Motor Vehicles suspended Roberts' driver's license for one year. Roberts then, on March 15, 1984, petitioned for a prompt judicial hearing to determine whether he did refuse to submit to a chemical test when offered.[6] The hearing was held on April 12, 1984, resulting in a finding by the court that Roberts

did refuse to submit to a chemical test when offered by a law enforcement officer. Record at 33.

Roberts contends he received head injuries in the accident which rendered him dizzy and that he has no recollection of being offered or refusing a chemical test for intoxication. On the other hand, the officers testified that Roberts was coherent, understood the request for the test and advice as to the consequences of his refusal, had no trouble communicating, and twice refused the test. The officers further testified that Roberts did not complain of dizziness, and that although he had some visible injuries, he refused medical treatment.

### ISSUES

The sole issue presented for our decision, which we have rephrased, is whether the

---

(2) submit a probable cause affidavit to the prosecuting attorney of the county in which the alleged offense occurred."

4. Indiana Code section 9–11–2–2.

5. Indiana Code section 9–11–4–8 provides:
"(a) When a judicial officer has determined that there was probable cause to believe that a person has violated IC 9–11–2, the prosecuting attorney shall forthwith deliver:
(1) the attested person's driving license (if available); and
(2) a copy of the probable cause affidavit; to the clerk of the circuit court if charges for a violation of IC 9–11–2 are pending against the person.
(b) Upon receipt of documents under subsection (a), the clerk of the circuit court shall forthwith forward the documents to the bureau.
(c) The probable cause affidavit required under section 7(b)(2) of this chapter must:
(1) set forth the grounds for the officer's belief that there was probable cause that the arrested person was operating a vehicle in violation of IC 9–11–2;
(2) state that the person was arrested for a violation of IC 9–11–2;
(3) state that the person:
(A) refused to submit to a chemical test when offered; or
(B) submitted to a chemical test that resulted in prima facie evidence that the person was intoxicated; and
(4) be sworn to by the officer."

6. Indiana Code section 9–11–4–10 provides:

"(a) A person whose driving privileges have been suspended under section 9 of this chapter is entitled to a prompt judicial hearing. The person may file a petition that requests a hearing:
(1) in the court where the charges with respect to his operation of a vehicle are pending; or
(2) if charges with respect to his operation of a vehicle have not been filed, in any court of the county where the alleged offense or refusal occurred that has jurisdiction over crimes committed in violation of IC 9–11–2.
(b) The hearing under this section shall be limited to the following issues:
(1) Whether a judicial officer has determined that the arresting law enforcement officer had probable cause to believe that the person was operating a vehicle in violation of IC 9–11–2.
(2) Whether the person refused to submit to a chemical test offered by a law enforcement officer.
(c) If the court finds:
(1) that there has not been a determination of probable cause; or
(2) that the person's driving privileges were suspended under section 9(a) of this chapter and that the person did not refuse to submit to a chemical test;
the court shall order the bureau to reinstate the person's driving privileges.
(d) The prosecuting attorney of the county in which a petition has been filed under this chapter shall represent the state on relation of the commissioner with respect to the petition."

trial court properly determined that Roberts refused a chemical test for intoxication which had been offered by law enforcement officers.

## DISCUSSION AND DECISION

■ Implied consent laws which provide for a pre-hearing administrative suspension of the driver's license of a driver whom police have probable cause to believe was driving while intoxicated when that driver refuses a request to submit to a chemical test for intoxication are constitutional so long as that person is assured a prompt post-suspension hearing. *Mackey v. Montrym* (1979), 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321; *Ruge v. Kovach* (1984), Ind., 467 N.E.2d 673. In fact, the Indiana implied consent law provides even greater protection than *Mackey* in that Ind. Code § 9–11–4–8(a) requires a pre-suspension judicial review of the police officer's probable cause determination. *Ruge* at 680. The state's interest in keeping its highways safe and removing the dangers posed to the public from the presence of drunken drivers on the highways justifies summary suspensions of driver's licenses pending a prompt post-suspension judicial hearing. *Ruge* at 681.

■ Roberts posits that because his alleged head injuries rendered him incapable of refusing the officer's request to submit to the chemical test, he is denied due process of law unless the word "knowing" be inserted into the statute by judicial interpretation thereby requiring a "knowing refusal" to justify the pre-hearing suspension. For the reasons hereinafter given, and in view of the facts and circumstances of this case, we disagree.

The history of the provision for suspension for refusal to submit to a chemical test in the implied consent law in this state is revealing. Initially the statute required the refusal to be made *willfully and knowingly* in order to invoke the pre-hearing suspension. Acts 1977, P.L. 125, § 3. (Then Ind.Code § 9–4–4.5–4(c)). In 1978, the legislature amended the statute to delete willfully, but continued the require-

ment that the refusal be made *knowingly.* Acts 1978, P.L. 2, § 937. (Then Ind.Code § 9–4–4.5–4(e)). The 1980 amendment retained the requirement of a *knowing* refusal. Acts 1980, P.L. 83. However, this provision was repealed by the statute heretofore set forth (Ind.Code § 9–11–4–7, *see* footnote 3, *infra* ) by Acts 1983, P.L. 143, § 9.

■ The legislative history of the challenged provision clearly convinces us of plain and unmistakable legislative intent to change the law and to make *refusal* to submit to an offered intoxication test grounds for pre-hearing suspension of driving privileges. We should not write words into the statute to impose conditions not prescribed by the legislature.

Our research has revealed two cases where courts of sister states have refused to read the word "knowingly" into such a statutory provision absent use of that word in the legislative enactment. *People v. Solzak* (1984), 126 Ill.App.3d 119, 81 Ill.Dec. 399, 466 N.E.2d 1201; *Hoban v. Rice* (1971), 25 Ohio St.2d 111, 267 N.E.2d 311. These cases are persuasive here.

In *Solzak*, the defendant was found in an intoxicated condition behind the steering wheel of her automobile which was on top of the remains of a bus stop wind shelter. She was arrested, taken to a hospital, and asked to submit to a blood alcohol test, being informed her refusal would result in a six-month suspension of her license. She refused by stating, "Nobody's going to take blood from me." At this time, Solzak appeared coherent, not hysterical, and not in pain. At the post-suspension hearing she testified she had no recollection of these events. The trial court ruled she had not knowingly refused the request and declined to suspend her license. In reversing, the Illinois Appellate Court said:

"It is clear to us the purpose of Illinois' implied consent statute is to make the streets and highways safer for its citizens by making prosecution of intoxicated drivers easier. Allowing an individual who is too intoxicated to knowing-

ly refuse a blood test to escape the deterrent and retributive effects of the statute would not serve to further that purpose. Furthermore, such a result would circumvent the plain meaning of the statute, which calls for suspension of one's driver's license upon refusing to take the blood test. *Noticeably absent from the statute is any exception to the rule for lack of knowing refusal, and we will not create such an exception by judicial fiat. Therefore, we hold that refusal to take a chemical test by a person under arrest for driving while under the influence of alcohol, other drug, or combination thereof, need not be a knowing refusal to be the basis for a suspension of driving privileges* within the provisions of Ill.Rev.Stat., 1982 Supp., ch. 95½, par. 11–501.1. [Emphasis supplied.]"

81 Ill.Dec. at 402, 466 N.E.2d at 1204.

The *Solzak* court further observed:

"Solzak contends that to penalize one incapable of consenting or objecting to a blood test request for reasons of incoherence, incapacity or unconsciousness would be absurd. As for incoherence, in our view, to allow one who is too intoxicated to understand the request to escape penalty would be absurd. Any person who has voluntarily become so intoxicated as to be incoherent and has then driven an automobile, thereby seriously jeopardizing the health and lives of other motorists and pedestrians, falls squarely within the purview of the implied consent statute."

81 Ill.Dec. at 402–03, 466 N.E.2d 1204–05.

In reaching its decision in *Solzak*, the Illinois court relied heavily upon the decision of the Ohio Supreme Court in *Hoban*, another case where the defendant contended that since he did not remember anything he did not refuse to take the test because the refusal must be knowingly and intentionally made. Hoban further contended he had no knowledge or recollection of being advised of the consequences of refusal; that the implied consent law requires such understanding; and that he was in-

capable of refusing because of his physical condition. The Ohio Supreme Court rejected these arguments, saying:

"The determination will be based on an objective standard, not a subjective standard, such as the state of mind of the licensee. The subjective state of mind of the licensee cannot control the outcome of the proceedings, and a police officer is not required to know the state of mind of the person arrested and determine whether such person understood he was refusing to submit to the test. To require that would place an impossible burden on the arresting officer.

Appellant's lack of recollection is not inconsistent with his refusal to take the sobriety test. It is possible for a licensee to be in such a state of intoxication that he does not understand what is happening, and, at the same time, by words, acts and general conduct to manifest an unwillingness or outright refusal to take the test. Although he may later have no memory of what occurred, his mere statement that he does not remember anything that happened is insufficient to show that he did not refuse to take the test.

If we were to adopt appellant's theory, a licensee could refuse the test prescribed by R.C. 4511.191(A) and then, at a Municipal Court hearing, testify that he does not remember anything. The result could be to nullify the effect of the statute.

II. Appellant attempts further to nullify the effect of the statute by contending that he did not understand the consequences of his refusal to take the test.

R.C. 4511.191(C) requires only that the arresting officer advise the arrested person of the consequences of his refusal to submit to a chemical test. This advice shall be in a written form prescribed by the Registrar of Motor Vehicles and be read and shown to the arrested person.

The foregoing discussion concerning appellant's state of mind in regard to his refusal to submit to a test is equally applicable in regard to his understanding

of the consequences of his refusal to take the test. When the advice as to the consequences of a refusal is given in the form prescribed by the Registrar, and there is a refusal to take the test, a claim by the licensee that he did not understand the consequences of refusing to take the test is not a defense to the license suspension.

We cannot subscribe to the defense of 'too drunk to understand' as a means of nullifying the effect of the implied-consent statute without additional legislative requirements that the refusal be intelligently, knowingly and intentionally made."

267 N.E.2d at 315–16.

██ Both *Solzak* and *Hoban* involve a driver who argued incapacity to refuse the test because of intoxication. The holdings in those cases are in accord with the general rule that a driver may not avoid the consequences of his refusal to submit to a test for intoxication on the ground his state of intoxication was such as to render him incapable of refusing. *Gaunt v. Motor Vehicle Division, Dept. of Transportation* (1983), 136 Ariz. 424 (App.), 666 P.2d 524; *Eilinger v. Director of California State Dept. of Motor Vehicles* (1983), 143 Cal. App.3d 748, 192 Cal.Rptr. 187; *Commonwealth, Dept. of Transportation, Bureau. of Traffic Safety v. Mumma* (1983), 79 Pa.Commw. 108, 468 A.2d 891; *Walthour v. Commonwealth, Dept. of Transportation* (1983), 74 Pa.Commw. 53, 458 A.2d 1066.

Two California cases, *Eilinger* and *McDonnell v. Dept. of Motor Vehicles* (1975), 45 Cal.App.3d 653, 119 Cal.Rptr. 804, and a recent decision from Arizona, *Sweitzer v. Dept. of Transportation, Motor Vehicle Division* (1984), 140 Ariz. 536 (App.), 683 P.2d 335, are helpful in arriving at a resolution of the issue before us. In *Eilinger,* the California Court of Appeal stated that "[a] *self-induced condition* ren-

dering one incapable of understanding does not excuse failure to take a test. [Citation omitted.] Only lack of understanding due to no fault of the driver excuses a refusal. [Citation omitted.] [Original emphasis.]" 192 Cal.Rptr. at 189. In *Eilinger,* the defendant sought to excuse her refusal on the ground that her extreme fear of police rendered her incapable of refusal.[7] The court rejected her argument noting that she was talkative and communicative until the admonition as to the consequences of refusal. Her ability to communicate refuted her claim of being incapable of refusal. " 'The determining factor is not the state of the suspect driver's mind, it is the fair meaning to be given his response to the demand that he submit to the chemical test.' " *Eilinger,* 192 Cal.Rptr. at 189 *quoting Maxsted v. Dept. of Motor Vehicles* (1971), 14 Cal.App.3d 982, 986, 92 Cal. Rptr. 579.

In *McDonnell,* the defendant driver had a hypoglycemia condition which was exacerbated by his consumption of alcohol and taking certain medication and eating a high carbohydrate meal. The court noted there was no case authority to support an impaired judgment defense to refusal to submit to a chemical test for intoxication. The court rejected the contention that refusal should be excused when judgment has been impaired because of unexpected results of the use of alcohol. "[A]n illness that is triggered by alcohol consumption and produces the symptoms of intoxication is not a defense to suspension where the arresting officer has reasonable cause to believe that a driver is intoxicated." *McDonnell,* 119 Cal.Rptr. at 810. The *McDonnell* court stated further:

"An impossible burden would be placed upon law enforcement if an officer had to eliminate medical or physiological conditions of a suspect driver with alcohol on his breath as a cause of erratic driving before proceeding with the case. Our ruling makes it unnecessary to de-

---

7. It is noteworthy that the California statute, unlike the Indiana act, creates an exception to voluntarily submitting to the test of the driver "is unconscious or otherwise in a condition ren-

dering him or her incapable of refusal ..." *Eilinger v. Director of California State Dept. of Motor Vehicles* (1983), 143 Cal.App.3d 748, 192 Cal.Rptr. 187, 188.

cide if an unexpected seizure unrelated to alcohol would excuse a refusal.... The circumstances of the case do not involve considerations that might arise if an unexpected seizure of hypoglycemia or other illness entirely unrelated to alcohol occurs when a person already is driving."

119 Cal.Rptr. at 811.

In *Sweitzer*, the Arizona Appellate Court reiterated the rule that voluntary intoxication will not excuse refusal to take the test but added the proviso unless the driver is unable to communicate a verbal or physical response to the officer's request.

There is no contention here that any driving problems were caused by any physical condition unrelated to alcohol. In fact, it is conceded that Roberts was not at fault in the accident. Neither was Roberts rendered unable to communicate either by reason of his intoxication or alleged injuries. He was communicative, appeared to understand the officer's request and admonition, and twice was able to verbalize his refusal. This was sufficient to support a finding of refusal to submit to the test. *Solzak; Hoban.* To allow Roberts to escape the consequences of his refusal by now claiming no recollection would, in the words of the Ohio Supreme Court, nullify the effect of the statute. *Hoban,* 267 N.E.2d at 316.

■ Roberts argues that refusal must be made with scienter, that is, consciously, knowingly, or informedly. We disagree. Our legislature removed the "willfully" and "knowingly" requirements which were in earlier versions of the implied consent law. This argument misperceives the meaning of "refusal" as used in implied consent laws. All that is required is that the suspect driver knows that he has been asked to submit to a chemical test and that he has been advised of the consequences of his refusal. It is no defense that he is not able to make a reasoned judgment as to what course of action to take. *Winter v. Peterson* (1981), 208 Neb. 785, 305 N.W.2d 803; *Hoban.*

The evidence most favorable to the judgment below establishes that Roberts was conscious, communicative, able to converse with the officers, appeared to understand the request that he submit to the test, was advised of the consequences of his refusal, and therefore verbalized, on two occasions, his refusal to take the test. He did not complain of any dizziness and was coherent. He made no indication of any failure to comprehend. To allow him to escape the consequences of his refusal on the basis of his testimony of lack of recollection would thwart the purpose of and nullify the statute.

■ Roberts argues that a *mens rea* requirement must be read into the statute in order to comport with due process. We decline to do so. Proceedings under the implied consent law are civil in nature, and the implied consent law is a civil statute. *Ruge,* at 677. *Mens rea* is not necessary in civil matters absent statutory requirement. *Wright v. Reuss* (1982), Ind.App., 434 N.E.2d 925. In the words of the California Court of Appeal in *McDonnell,* "[b]eing civil in nature, mens rea concepts of the criminal law are not applicable to proceedings under the [implied consent] statute unless the Legislature sees fit to amend the statute in some manner such as by adding 'willful and knowing' to the word 'refusal' therein." 119 Cal.Rptr. at 811. Here, our legislature has not seen fit to add the words "willfully and knowingly," but rather, it deleted those words from the former version. Thus, no *mens rea* is required by the statute, and we are not of the opinion that due process concepts demand that we write in such a requirement under the guise of judicial interpretation.

Both the Supreme Court of the United States and our supreme court have upheld the constitutionality of implied consent laws and pre-hearing suspensions for refusal to submit to chemical tests for intoxication on the basis of the state's most compelling interest in keeping its highways safe by removing drunken drivers. *Mackey; Ruge.* Our decision here promotes such laudable and constitutional purpose.

Judgment affirmed.

ROBERTSON and NEAL, JJ., concur.